617 A.2d 796

James A. TALIFERRO, Jr., Appellant,

v.

JOHNS–MANVILLE CORPORATION, Johns–Manville Sales Corporation, Raybestos–Manhattan, Inc., Armstrong World Industries, Inc., Amatex Corporation, Celotex Corporation, Eagle–Picher Industries, Inc., Forty–Eight Insulation, Inc., GAF Corporation Garlock, Inc., H.K. Porter Co., Inc., Southern Textile Corporation, Keene Corporation, Owens–Corning Fiberglas Corporation, Owens–Illinois, Inc., Pacor, Inc., Pittsburgh Corning Corporation, Unarco Industries, Inc., Crown Cork & Seal Company, Inc., Fibreboard Corporation, Appellees,

Nicolet, Inc., Turner & Newall, Ltd.,
D.A.R. Industrial Products, Inc.

Superior Court of Pennsylvania.

Argued Sept. 17, 1992.

Filed Dec. 9, 1992.

Steven J. Cooperstein, Philadelphia, for appellants.

Ira Lefton, Pittsburgh, for Pittsburgh Corning & Fibreboard Corp., appellees.

Before McEWEN, DEL SOLE and HUDOCK, JJ.

HUDOCK, Judge.

James Taliferro (Appellant) appeals from the trial court's grant of compulsory non-suit to several defendants in an asbestos case. We reverse.

The facts and procedural history were summarized by the trial court as follows:

[Appellant] is a 52 year old present worker at the Philadelphia Naval Shipyard. This case arises from [Appellant's] occupational exposure to asbestos at the Shipyard during a 14–year period beginning with his hiring in August, 1967, and ending in August, 1981, when he was diagnosed with lung cancer. [Appellant] has also experienced bilateral pleural thickening, for which he also sought damages.

A trial before this Court and a jury began on February 22, 1990. On February 26, 1990, at the close of [Appellant's]

case, [Appellees] [1] moved for compulsory nonsuit. Owing to scheduling problems, and by agreement of counsel, some defense testimony was presented while the Court considered this Motion, with the understanding that the testimony would not be considered in the resolution of the Motion.

The Motion was granted, and the jury was discharged on February 27, 1990. Subsequently, [Appellant] pled a Post–Trial Motion to remove the non-suit. After oral argument, the Motion was denied, by Order dated October 4, 1991, and docketed October 28, 1991. This timely appeal followed.

According to the evidence, [Appellant] began working at the Philadelphia Naval Shipyard in August of 1967 as a laborer. Over the ensuing 14 years, he continued to perform essentially the same job—general cleanup and removal of debris from ships being constructed, reconstructed, or repaired—albeit under a succession of job titles. Beginning at the age 16, and continuing through this period, [Appellant] admittedly smoked heavily—on average, a pack a day, although some of the medical records admitted into evidence reported that he smoked as little as half a pack a day, while other records claimed that his consumption was closer to two packs a day.

In May of 1981, [Appellant] began to experience severe chest pain accompanied with coughing up blood. A diagnosis of epidemoid cancer of the upper lobe of his right lung followed. The location of the tumor rendered surgical excision impossible, therefore, [sic] a course of radiation and chemotherapy was selected. This treatment was apparently successful, as the tumor was eliminated and, as of the date of trial, no further cancer had been detected in [Appellant's] body. Concurrently, [Appellant] quit smoking entirely, and has not reacquired the habit since. During his Navy Yard employment, he was exposed to asbestos on almost a daily

1. At the time of trial, only four non-bankrupt defendants had not reached a settlement with Appellant. Of these four, H.K. Porter Co., Inc., and Celotex Corporation filed for bankruptcy while post-trial motions were pending. These two defendants were therefore severed from the case, leaving Fibreboard Corporation and Pittsburgh–Corning as the only remaining defendants. All references to Appellees in this memorandum are to these two remaining defendants.

basis until at least 1976, when asbestos was supposedly banned at the facility. [Appellant] suggested on cross-examination that he believed that asbestos products continued in use even later, although there was no independent proof of this belief.

According to the evidence, [Appellant] also has pleural thickening in both lungs, however, this thickening is presently asymptomatic. According to [Appellant's] expert, Dr. Allan Freedman, the thickening is not responsible for any complaints voiced by [Appellant], and is not the cause of the reductions in pulmonary function noted in the course of testing, which Dr. Freedman attributes to the radiation therapy administered.

Trial Court Opinion at pp. 1–3 (footnotes and references to notes of testimony omitted).

Appellant raises the following issues on appeal:

1. Did the court below err in granting a compulsory nonsuit on [Appellant's] claim for asbestos-related lung cancer?

2. Did the court below err in granting a compulsory nonsuit on [Appellant's] claim for asbestos-related pleural thickening?

Appellant's Brief at p. 3. A motion for compulsory non-suit allows a defendant to test the sufficiency of a plaintiff's evidence and may be entered only in cases where it is clear that the plaintiff has not established a cause of action; in making this determination, the plaintiff must be given the benefit of all reasonable inferences arising from the evidence. *Hatbob v. Brown,* 394 Pa.Super. 234, 575 A.2d 607 (1990). When so viewed, a non-suit is properly entered if the plaintiff has not introduced sufficient evidence to establish the necessary elements to maintain a cause of action; it is the duty of the trial court to make this determination prior to the submission of the case to the jury. *Id.* When this Court reviews the grant of a non-suit, we must resolve all conflicts in the evidence in favor of the party against whom the non-suit was entered. *Eisenhauer v. Clock Tower Associates,* 399 Pa.Su-

per. 238, 582 A.2d 33 (1990). With these standards in mind, we shall review Appellant's claims.

Appellant first argues that the trial court erred in ruling that the evidence presented by him was insufficient to raise a jury issue as to his cause of action for asbestos-related lung cancer. The trial court based its ruling on the belief that Appellant's medical expert had no foundation for his opinion that asbestos exposure was a substantial contributing factor to his lung cancer. Appellant argues that this conclusion was in error because none of the defendants had objected to the expert's expression of opinion on causation. Appellant claims that the trial court was therefore bound to accept that opinion in ruling on the motion for compulsory non-suit. Alternatively, Appellant then claims that, when Dr. Freedman's deposition is considered in its entirety, there can be no question concerning the sufficiency of the causation evidence he presented. Appellees argue that Dr. Freedman's sole basis for his expert testimony regarding causation was based on an epidemiological study which did not discuss the increased risk of contracting lung cancer for a latency period shorter than twenty-five years after exposure and did not address the synergetic effects of asbestos exposure and cigarette smoking. The trial court concurred in Appellees position and, therefore, granted the non-suit. Upon review, we find the grant of non-suit was improper.

Initially, we find no merit to Appellant's claim that Appellees' failure to object to Dr. Freedman's expert testimony renders it sufficient to establish a jury question as to causation. As stated by the trial court, "[t]o so rule would require this Court to equate admissibility with sufficiency." Trial Court Opinion at p. 6. Appellant's evidence of causation rested entirely upon the deposition of Dr. Allen Freedman, a board certified specialist in both the pulmonary and critical care subspecialties of internal medicine. On direct examination, Dr. Freedman testified that he has seen people with asbestos-related diseases on numerous occasions over a seven-year period. He further testified that he has treated hundreds of people with asbestos-related diseases and has testi-

fied as an expert on prior occasions, for both plaintiff and defendant, in asbestos cases. Asked whether there are baseline or background risks for the development of lung cancer among the non-asbestos exposed, non-cigarette smoking general population in this country, Dr. Freedman responded that based on statistics gathered in this country and abroad, this baseline risk was 11 per 100,000 per year. Dr. Freedman was then asked if there is an increased risk of lung cancer for persons occupationally exposed to asbestos but who are not cigarette smokers. In response, Dr. Freedman, for the first time, cited a study by Selikoff in which over 17,000 insulators in America and Canada were studied over a period of years. Dr. Freedman then stated that Selikoff found a five-fold increase in risk above baseline and that other individuals had found increased risks in the same range depending on the different population groups. Turning next to cigarette smoking, Dr. Freedman responded that a number of studies existed, but, for comparative purposes, he suggested it is best to use Selikoff's study in which he found cigarette smokers who are not exposed to asbestos have a ten-fold increase above baseline of developing lung cancer.[2] Finally, Dr. Freedman was asked if there was an increased risk above the baseline for persons who both smoke cigarettes and who have been occupationally exposed to asbestos. Dr. Freedman responded that the risks were even higher, although risks combine in various ways and interact differently. Once again referring to Selikoff's study, Dr. Freedman stated that the two risks act synergistically, thereby creating a fifty-fold increase in risk of developing lung cancer. Dr. Freedman further opined that after a person stops smoking, the increased risk declines over time until it approaches the baseline between ten and fifteen years. When a person ceases to be exposed to asbestos, there is only a very small decline because the asbestos remains in the body.

Turning to a discussion of Appellant, after completely examining him, his medical and employment history, and his medical and employment records, Dr. Freedman stated:

**2.** Dr. Freedman did not state this was the same study by Selikoff that he earlier referenced.

I summarized a number of impressions; the first with respect to his exposure to asbestos for approximately 20 years, also with respect to his being a cigarette smoker; the next impression is with respect to the right upper lobe epidermoid or squamous cell carcinoma that he had that was found to be metastatic or spread to the mediastinal or central lymph nodes and was characterized as a stage III cancer which is—we have stage I, stage II, and stage III, of course, is the kind of cancer that just can't be cut out because of where it's spread and where it's located.

I concluded that as of the date of the last medical records that I had, his cancer appeared to have responded to therapy and was stable. I believed that to a reasonable degree of medical certainty, which I believe is the phrase in a you [sic] attorneys use, that [Appellant's] cigarette smoking and his asbestos exposure were substantial contributing factors to his bronchogenic carcinoma.

I concluded that he had bilateral abnormalities of the pleural lining and also a plaque that was seen on his left diaphragm, and that these pleural abnormalities were most likely due to his asbestos exposure, and I also rendered an opinion regarding future risks in [Appellant's] case.

Deposition of Allen P. Freedman, M.D., 2/8/90, at pp. 80–81. Upon further questioning, Dr. Freedman then reiterated that, to a reasonable degree of medical certainty, asbestos exposure was a substantial contributing factor to both Appellant's pleural thickening and plaques and his development of lung cancer.

Dr. Freedman further opined, to a reasonable degree of medical certainty, that the restrictions in pulmonary functions and reduction in diffusing capacity experienced by Appellant were caused by his lung cancer and treatment, which caused scarring and reduction in the size of the lung. Once again, Dr. Freedman opined:

I believe to a reasonable degree of medical certainty that [Appellant's] occupational exposure to asbestos was a substantial contributing factor to the development of his pleural plaques; also, that it was a substantial contributing factor to his development of bronchogenic carcinoma and the compli-

cations of bronchogenic carcinoma, including the pulmonary restrictive pattern with consequent reduction in lung volumes, in diffusing capacity and shortness of breath.

Deposition of Allen P. Freedman, M.D., 2/8/90, at p. 120. When asked if he had an opinion to a reasonable degree of medical certainty as to whether each individual period of asbestos exposure was a substantial contributing factor to the development of pleural thickening and lung cancer, Dr. Freedman responded that he was unable to separate the contributions of the individual periods of exposure, but that each and every individual period of exposure was a substantial contributing factor.

Dr. Freedman was then asked questions regarding Appellant's increased risk of contracting lung cancer in the future. Obviously, because Appellant had already contacted lung cancer, the actual questioning concerned, for the most part, the increased risk of recurrence.[3] In response, Dr. Freedman testified that Appellant's risks are actually compounded by asbestos exposure alone, and the heavy exposure he described actually appears to be similar to that of an insulator. Thus, without referring to any specific study, Dr. Freedman stated that Appellant had a five-fold increased risk. Because Appellant also had a smoking history, Dr. Freedman testified that the interaction of these two risks represented a fifty-fold increase in contracting lung cancer. Dr. Freedman also stated the fact that, because Appellant already had lung cancer once before, he had a higher incidence of lung cancer recurring. Dr. Freedman also opined that Appellant had at least a 100–fold increased risk of developing mesothelioma.

Upon cross-examination, Dr. Freedman was asked whether the asbestos exposure experienced by the insulators in the Selikoff studies differed from the type of exposure to which Appellant was exposed. Dr. Freedman testified that he could not answer the question with a simple yes or no. He then referred to another Selikoff study of shipyard workers who were found to have half the risk of the insulators above

3. As shall be discussed *infra,* Dr. Freedman also discussed the increased risk of Appellant contracting mesothelioma.

mentioned, or a two and one-half increased risk. Dr. Freedman then stated that Appellant described direct handling of asbestos in addition to the "bystander" exposure detected in the shipyard studies and, for that reason, Appellant was similar to an insulator. Dr. Freedman further stated that Appellant would have had an increased risk of developing lung cancer from cigarette smoking alone and, from his asbestos exposure alone, he would have had a substantially increased risk. He stated that if Appellant had never smoked cigarettes, he would not be at all surprised if Appellant developed lung cancer. The same conclusion would result if Appellant had only smoked cigarettes and had not been exposed to asbestos. Dr. Freedman also agreed that lung cancer found in the upper lobe of the lung was a classic area caused by cigarette smoking and that cancer of the lower lung is associated with asbestos exposure. Dr. Freedman testified that he was aware of other studies by Selikoff which found lower incidences of cancer for those exposed less to asbestos, but noted that these preliminary studies were based on much smaller groups.

Counsel for defense then asked Dr. Freedman about yet another study conducted by Selikoff that incorporated the effects of cigarette smoking on asbestos workers. Counsel misread this particular study. Dr. Freedman then noted that there is conflicting authority as to whether one must develop asbestosis prior to the onset of lung cancer. Dr. Freedman admitted on cross-examination that in other depositions he had testified that the latency period for asbestos-related lung cancer was in the range of twenty years. Dr. Freedman was then asked if he ever testified that the latency period could be as short as fourteen years, the approximate amount of exposure experienced by Appellant. He agreed that the average latency for lung cancer is twenty years. Dr. Freedman explained that twenty years is the time period in which lung cancer most frequently develops, considering all asbestos-related cancers, but he has never ruled out shorter periods of latency. Dr. Freedman further agreed that a 1979 study by Selikoff states that only one incidence of lung cancer occurred

before twenty years elapsed from initial exposure. Dr. Freedman again stated that the best data comes from larger studies, that Selikoff's shipyard study shows an increased risk of exposure of two and one-half percent, and that Appellant's exposure could be treated as an insulator with a five-fold increase in risk.

On further cross-examination, Dr. Freedman agreed that in most cases pleural thickening is not a disease. He further agreed that Appellant's pleural thickening is not responsible for any of his present medical complaints or reductions in pulmonary functions. Dr. Freedman was then questioned by different defense counsel. Dr. Freedman agreed that the period of Appellant's asbestos exposure was approximately fourteen years rather than the "approximately twenty" Dr. Freedman had once written in his report. Dr. Freedman was once again asked about the article summarizing Selikoff's findings regarding the over 17,000 insulator workers and agreed that the average latency period found was between twenty to forty years, with most incidences of lung cancer showing up in thirty to forty years. In this study, which does not account for cigarette smoking, the statistics suggest a 2.55 rate of increase to those occupationally exposed between a ten and fourteen year period.

A third defense counsel cross-examined Dr. Freedman. Upon re-direct examination, Appellant's counsel again referred him to the Selikoff study where Selikoff expected a 2.7 increase in lung cancer for those exposed between ten to fourteen years and found an actual 2.55 increased risk. Dr. Freedman then agreed with a study by Churg and Green which stated that lung cancer cases in asbestos workers did not begin to appear until ten years after exposure and peak at approximately thirty years. Reference was then made to a 1984 study by Auerbach, and others, which stated in asbestos-related cases, cancerous tumors occurred more frequently in the upper parts of the lung than the lower lung. Dr. Freedman again stated that if there was no evidence of a smoking history, he would have no difficulty concluding, given Appellant's work history and resultant exposure, that Appellant's

lung cancer is attributable exclusively to the asbestos exposure. Dr. Freedman also opined that the period of latency was shortened by the synergistic effect of cigarette smoking and asbestos exposure. Dr. Freedman stated that there are a number of sources to support this conclusion. He then referred to a specific summary article which made the same finding. Dr. Freedman further cited to an article which supports the latency periods previously testified to by him.

Finally, on cross-examination once again, Dr. Freedman agreed that the author in this last article referenced did not state whether cigarette smoking was accounted for in reaching his conclusions. Dr. Freedman also stated that the study regarding the 2.55 increase in shipyard workers was not controlled for smoking. Dr. Freedman also admitted that the article he earlier referenced was basically a summary of findings by Selikoff and another authority, McDonald. Lastly, Dr. Freedman admitted that McDonald's finding were also based on Selikoff, so that the relevant figures were 2.7 expected increase in risk in a ten to fourteen year period.

■■ The trial court granted Appellees' motion for compulsory nonsuit on the basis that Dr. Freedman's causation testimony was based solely on an article which does not support his conclusions. It is readily apparent upon a thorough review of Dr. Freedman's testimony, as summarized above, that this conclusion is overly simplistic. Although relying on several studies by Selikoff, Dr. Freedman recognized that these studies had to be supplemented by other studies that took into account the effect of cigarette smoking. Thus, it is the synthesis of the various authorities by the testifying expert that becomes most important.

■■ To be admissible, evidence must be both competent and relevant. *Moran v. G. & W.H. Corson, Inc.*, 402 Pa.Super. 101, 586 A.2d 416 (1991), *alloc. den.*, 529 Pa. 650, 602 A.2d 860 (1992). Evidence is relevant, and therefore admissible, if it "logically or reasonably tends to prove or disprove a material fact in issue, tends to make such a fact more or less probable, *or affords the basis for or supports a reasonable*

*inference or presumption regarding the existence of a material fact." Id.,* at 125, 586 A.2d at 428.  Upon a review of the entire record, we conclude that the Selikoff study was relevant in that it provided Dr. Freedman with a basis for his conclusion that Appellant was at an increased risk of contracting lung cancer.

■■■  In the absence of his own study, an expert reasonably can turn to medical literature in the relevant field as the basis for reaching an opinion. *See Mazur v. Merck & Co., Inc.,* 742 F.Supp. 239 (E.D.Pa.1990) (expert relied on medical studies discussing possible link between vaccine and disease). The fact that Appellant's asbestos exposure was not identical to those workers studied by Selikoff, and that that particular Selikoff article did not consider the effects of smoking,[4] is a matter of weight to be assigned the expert's testimony rather than whether the study can be relied upon in reaching an opinion as to Appellant's present condition and increased risk. *See Ruzzi v. Butler Petroleum Co.,* 527 Pa. 1, 588 A.2d 1 (1991) (fact that jury was not told how injuries in government studies cited by expert compared to plaintiff's injuries went to weight of the evidence rather than admissibility).  As most recently stated by this Court:

> In noting the necessity and value of permitting experts to rely on extrajudicial reports and sources, it is important to stress that it is actually the testifying expert's opinion which is being presented and which is subject to scrutiny, cross-examination and credibility determinations.  Hence, it is often the case, as it was here, that experts are questioned concerning whether relied-upon sources are "authoritative" or generally accepted, whether the source material is truly the type ordinarily relied on by similar experts, whether independent or further judgment was brought to bear on particular source material and whether the expert is competent enough to judge the reliability of the sources upon which he relied.  These are the safeguards which assure

4.  Other studies by Selikoff consider the effect of smoking and exposure to asbestos.

that the experts' opinions are not being offered based on inherently untrustworthy data or data which is not commonly used by other professionals. If an expert has made faulty assumptions or leaps of judgment in relying on certain sources or in forming conclusions based on those sources, these issues are the proper subject of cross-examination.

*Primavera v. Celotex Corp.*, 415 Pa.Super. 41, 51, 608 A.2d 515, 520-21 (1992). The expert testimony was properly admitted in the present case, leaving the weight to be accorded such testimony open to challenge by cross-examination, defense expert witnesses, and for jury determination. Thus, the grant of compulsory non-suit was improper.[5]

■ Appellant next claims that the trial court erred in granting a compulsory non-suit as to his asymptomatic pleural thickening. Initially, Appellant claims that the motion was untimely. More specifically, he argues that, while he agreed to allow a defense witness to testify before disposition of the written motion for non-suit submitted by Celotex and joined by Appellees, he did not consent to the consideration of a non-suit motion regarding pleural thickening made during oral argument on the written motion. Both the trial court and Appellees readily dismiss this issue by stating that Appellant agreed to allow this procedure to occur and cannot now be heard to complain. The court below and Appellees miss the point of Appellant's claim. Appellant is not taking issue with

5. Appellees argue that this Court should follow the lead of a number of our sister jurisdictions and find that epidemiological studies, such as that prepared by Selikoff and Hammond in the present case, are not competent evidence of the increased risk of any particular individual. For the reasons stated above, we decline to reach such a conclusion.

It is also true that this Court can affirm the action of the trial court for a reason different than that stated or found by the trial court. *Soloski v. Hetrick*, 396 Pa.Super. 140, 578 A.2d 445 (1990). Appellees argue that non-suit as to Appellant's lung cancer claims was also appropriate because Dr. Freedman's deposition testimony could not establish "but for" causation with regard to asbestos exposure and his development of lung cancer. We reject this claim also, for, as indicated above, Dr. Freedman opined that the lung cancer would have developed even absent the smoking history of Appellant.

the procedure used;[6] rather, he takes issue with the matters considered during oral argument on the written motion.

The written motion for non-suit dealt only with Appellant's lung cancer claims. Appellant brought suit to recover damages for his present medical condition, asymptomatic pleural thickening, prior contraction of lung cancer, and the increased risk and fear of the recurrence of lung cancer. The trial court, by considering both motions was able to, and did in fact, dismiss Appellant's entire cause of action. This was not contemplated in the written motion for compulsory non-suit. However, we need not consider the effect of the failure to raise the non-suit regarding pleural thickening at the same time as the non-suit for lung cancer, because we find that the trial court erred in granting non-suit as to Appellant's pleural thickening claim.

In Pennsylvania, a legal injury occurs when there is "damage which is physically objective and ascertainable." *Ayers v. Morgan*, 397 Pa. 282, 290, 154 A.2d 788, 792 (1959). In *Doe v. Johns–Manville Corporation*, 324 Pa.Super. 469, 471 A.2d 1252 (1984), an *en banc* panel of this Court, relying on the definition of injury in *Ayers v. Morgan, supra,* held that asymptomatic pleural thickening constituted a legal injury and, therefore, upon discovery of same, the statute of limitations began to run on any action to recover damages for that condition and subsequent, related conditions. In *Manzi v. H.K. Porter Company*, 402 Pa.Super. 595, 587 A.2d 778 (1991), the trial court submitted a special interrogatory to the jury to determine whether Manzi's pleural thickening was a compensable injury and, if they decided that it was not such, the trial court instructed the jury that Manzi would be able to return to court should he develop a subsequent disease. While this instruction seemingly contradicts the traditional notion that

6. Generally, a motion for non-suit cannot be granted once a defendant has offered evidence. However, if a plaintiff waives operation of the general rule and agrees to defer the disposition of the motion until after the defense evidence is heard, this Court will consider if "plaintiff's evidence alone was sufficient to establish its claim." *Target Sportswear v. Clearfield Foundation,* 327 Pa.Super. 1, 10, 474 A.2d 1142, 1147 (1984).

Pennsylvania is a one disease/one injury state, a panel of this Court determined that "pleural thickening . . . has never been defined as a compensable injury as a matter of law in Pennsylvania," *Id.*, at 599, 587 A.2d at 780, and "no appellate court in this Commonwealth has treated a non-compensable condition as an injury." *Id.*, at 602, 587 A.2d at 781. Thus, the *Manzi* panel reasoned that, because no injury was found, the trial court's instruction was consistent with Pennsylvania law.

The above-cited statements in *Manzi* were based on the fact that a jury determined that Manzi's pleural thickening was not compensable, not on the basis that it was not compensable as a matter of law. Indeed, the *Manzi* panel stated, "[w]hether a condition such a pleural thickening is an injury entitling the plaintiff to damages is a factual question for the jury." *Id.*, at 598, 587 A.2d at 779. Finally, in a recent *en banc* panel decision, this Court found that Pennsylvania should join the majority of sister states and become a "two-disease" state in regard to asbestos litigation. This means that should the plaintiff develop a subsequent disease, he or she can bring a second lawsuit. The panel then stated that:

> In reaching this conclusion [that an asbestos plaintiff may assert, in a second lawsuit, a claim for a distinct, separate disease if and when it develops at a later time] we have not adopted the argument that asymptomatic pleural thickening is insufficient injury, as a matter of law, to support a cause of action. In Pennsylvania, the Supreme Court has said that "injury is done when the act heralding a possible tort inflicts a damage which is physically objective and ascertainable." *Ayers v. Morgan*, 397 Pa. 282, 290, 154 A.2d 788, 792 (1959). See, e.g.: *Manzi v. H.K. Porter Co., supra* [402 Pa.Super.] at 598, 587 A.2d at 779; *Pounds v. Lehman*, 384 Pa.Super. 358, 361, 558 A.2d 872, 873 (1989); *Corbett v. Weisband*, 380 Pa.Super. 292, 309, 551 A.2d 1059, 1068 (1988); *Bickford v. Joson*, 368 Pa.Super. 211, 214, 533 A.2d 1029, 1031 (1987); *Groover v. Riddle Memorial Hospital*, 357 Pa.Super. 420, 428, 516 A.2d 53, 57 (1986). The physiological changes evidenced by pleural thickening are a clear indication that damage which is objective and ascertainable

has occurred to tissues in the thoracic cavity. Hence, we conclude that pleural thickening, even when asymptomatic, is an injury which gives rise to a cause of action.

*Marinari v. Asbestos Corporation, Ltd.,* 417 Pa.Super. 440, 612 A.2d 1021 (1992) (*en banc*). Given this summary of the current law, we find that whether Appellant's asymptomatic pleural thickening is a compensable injury is a question proper for jury determination. The grant of non-suit as to this claim was, therefore, also improper.[7]

Order reversed. The matter is remanded to the trial court for proceedings consistent with this Opinion. Jurisdiction relinquished.

---

7.  Appellees also mention the fact that Appellant is seeking recovery for an increased fear of cancer recurring or contracting an additional cancer. Although fear is a subjective concept, this Court has, in the past, allowed for such recovery. *Giovanetti v. Johns–Manville Corp.,* 372 Pa.Super. 431, 539 A.2d 871 (1988); *Doe v. Johns–Manville Corp., supra.*