J-S31026-16

2016 PA Super 260

| | |
|---|---|
| JOHN M. GREGURY AND BARBARA J. ROBEY | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| SHIRLEY M. GREGURAS AND ESTATE OF ADOLF GREGURAS, AND JAMES T. YINGST AND GUTHRIE, NONEMAKER, YINGST & HART | No. 1467 MDA 2015 |

Appeal from the Judgment Entered August 17, 2015
In the Court of Common Pleas of York County
Civil Division at No(s): 2009-SU-003228-01

BEFORE:  SHOGAN, J., OTT, J., and STRASSBURGER, J.[*]

DISSENTING OPINION BY OTT, J.:                **FILED NOVEMBER 22, 2016**

Because I believe there was no reversible error and the nonsuit was properly granted, I very respectfully dissent.

This action was brought by John M. Gregury and Barbara J. Robey (collectively Appellants) against Shirley M. Greguras (Shirley), the Estate of Adolph Greguras, James T. Yingst (Yingst), and Guthrie, Nonemaker, Yingst, and Hart (GNYH) (collectively Appellees).  Shirley is Appellants' stepmother

_____

[*] Retired Senior Judge assigned to the Superior Court.

and was 89 years of age in 2014.[1]  Yingst prepared wills for Shirley and her husband, Adolph Greguras ("the Decedent") in 2000.  The Decedent died in 2007.  At the heart of the dispute in this case are two joint accounts, which were owned by Shirley and Decedent and opened in 2004, that passed outside the Decedent's will.

The trial court, in its opinion in support of the order denying post-trial motions, distilled the facts giving rise to the underlying action, as follows:

> A husband [the Decedent] and wife [Shirley] go to husband's attorney [Yingst] and husband asks attorney to draft wills for himself and his wife. His will states that his estate will go to his wife with a residuary clause for his children.  [The Decedent's will is executed on March 2, 2000.] Upon his death [in 2007] the majority of his wealth and assets are held in joint accounts with his wife.  Some remaining personal property of his may be distributed to [Appellants] as part of the estate, but they have no claim to the money held in the accounts. In fact, [Appellants] entered the residence of Shirley [] and portioned out the personal property to which they felt they were entitled and sequestered it away from [Shirley]. [Appellants] believe they are entitled to the money held jointly by [Shirley] and their deceased father and that [Shirley] and/or Attorney Yingst committed some sort of fraud or breach of duty that has prevented them from accessing those assets. ….

Trial Court Opinion Denying Plaintiffs' Motions for Post-trial Relief, 8/10/2015, at 2–3 (unnumbered).

I begin with the third issue, whether the trial court erred in denying Appellants' motion for mistrial and/or curative instruction when Shirley

---

[1] **See** Trial Court Opinion, 8/13/2014, at 1 (addressing summary judgment motion filed by Shirley).

waived her attorney-client privilege at trial after asserting it throughout discovery and pre-trial processes. The Majority found merit in this argument, and concluded that a new trial was warranted in this case. For the reasons set forth below, I disagree.

As already stated by the Majority, we review the trial court's grant or refusal of a mistrial for an abuse of discretion. ***Bugosh v. Allen Refractories Co.***, 932 A.2d 901, 914-915 (Pa. Super. 2007). Furthermore, relevant to this issue, the attorney-client privilege is codified at Section 5928 of the Judicial Code, and provides:

> In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose same, unless in either case this privilege is waived upon trial by the client.

42 Pa.C.S. § 5928.

By way of background to this issue, it is important to note that the issue of attorney-client privilege arose during discovery in two contexts. First, Yingst asserted the attorney-client privilege regarding any communications with Shirley and the Decedent.[2] Second, Yingst did not assert the attorney-client privilege regarding communications with Shirley

---

[2] ***See*** N.T., 3/16/2015–3/18/2015, at 84, 121–122; Appellants' Trial Brief, 3/10/2015, at 8; Appellants' Brief in Opposition to the Motions for Summary Judgment, 5/1/2014, at 8.

when her daughter was also present.[3]   With regard to these latter communications, which occurred after the Decedent's death, Appellants' counsel argued to the court prior to trial that there was "irregular assertions of the attorney-client privilege where Yingst "selectively declined to disclose content when he 'was not certain whether [Shirley's] daughter had been present'" and, therefore, that "negative inferences are warranted from the selective attorney-client communications disclosures."[4]

At trial, in his opening statement, Appellants' counsel discussed the attorney-client privilege, as follows:

> [Yingst] claims to have taken notes during the first meeting, and [Shirley] testified that she remembered him taking notes.
>
> They produced what he said was his entire file without any assertion of attorney/client privileges to any document.  No such notes appear in the file.  He had no informational materials that he gave to his client.
>
> ****
>
> ... Defendant Yingst claimed that he had gave a specific speech to each client regarding types of property and other such matters. However, when he was asked to provide a recitation of that speech in deposition, he said that it varied based on questions asked and declined to give one.

---

[3] **See** N.T., 3/16/2015–3/18/2015, at 85.

[4] Appellants' Trial Brief, 3/10/2015, at 12 (italics omitted), 14; Appellants' Brief in Opposition to the Motions for Summary Judgment, 5/1/2014, at 12 (italics omitted), 14.

He admitted differences in simultaneously executed wills by spouses was unusual. He then asserted attorney/client privilege as to what was or was not stated by [the Decedent] or [Shirley] as to any information provided to them by either.

This brings up a point, and I note it in the issue of credibility. Both Defendants exercised attorney/client privilege inconsistently in their depositions, and I believe in their testimony they will have to admit that they disclosed contents of communication regarding certain matters and chose not to regarding others. I believe that you may consider that in assessing their credibility.

N.T., 3/16/2015-3/18/2015, at 36–37. Thereafter, counsel for Yingst/GNYH, in his opening, indicated that Shirley would waive her previously asserted attorney-client privilege:

… You've got Shirley, who is going to testify. She recalls the meeting with Mr. Yingst. They went in to see him to draft wills. They were going to take care of each other. And in the event they both died at the same time, it would just spill to their children, plain and simple.

You're going to hear Mr. Yingst testify that he had the meeting with [the Decedent]. He had the meeting with Shirley. They described what their asset picture was, that Mr. Yingst said you understand jointly held assets, joint bank accounts, your checking account, savings account, anything you are both owners on, they don't come inside the will.

*Id.* at 51–52.

Following the conclusion of Yingst/GYNH's counsel's opening, and after the jury had been excused for lunch, appellants' counsel asked for a mistrial, curative instruction, and additional discovery, arguing:

I hate to do this, Your Honor, but I have two things: One, I believe that the content of the opening argument of the defense counsel … constitutes grounds for a mistrial. I mean it went that far.

And it also raises, if not that, it raises an issue which I had included in the pretrial brief regarding the inconsistent assertion of attorney/client privilege and the insertion at trial of information alleged to have been communicated in an attorney/client communication to which the Defendant Yingst did not testify in his deposition and regarding which he refused to testify at his deposition and regarding which he's now through counsel told the jury information that is absolutely inconsistent with the assertion of attorney/client privilege he previously made.

And the specific thing that I do recall, and if necessary I would have to go through the notes, but the specific thing was that he had explained the types of property and that [the Decedent] knew the different types of property that he had and didn't have.

And not only is that inconsistent – I would respectfully submit, Your Honor, that if you were to give a curative instruction indicating that any statements made in opening argument regarding what Mr. Yingst did or did not say to his client in particular, they should recall the prior instruction you gave about not argument, but I would ask that the Court give an instruction to counsel at this time that if their witness asserted attorney/client privilege during a deposition, that witness is not permitted at trial to inject matters that they declined to testify to during their deposition.

It can't -- And they raised it inconsistently. I pointed it out in the summary judgment brief, I pointed it out in the trial brief, and I believe those inconsistencies allow me to make credibility claims to the jury, but I don't think they can cure their defect at trial by suddenly sandbagging me with additional disclosures that he refused to make at the time of his deposition. Thank you.

*Id.* at 62–64.

In response, counsel for Yingst/GNYH argued:

Briefly, if I may respond, Your Honor, clearly what was said in argument does not constitute grounds for a mistrial. It's not evidence. It's argument.

But with respect to [appellants' counsel's] now angst about attorney/client privilege, he knew of the assertion of the privilege during the depositions. He could have filed a motion in limine as we did to preclude certain evidence. He failed to do so.

The fact is at the deposition the attorney/client privilege had not been waived. Subsequent conversations with Shirley, who holds the privilege, that privilege has been waived and the testimony is going to come in.

The fact that [appellants' counsel's] failed to do any type of pretrial filings, the fact that he didn't file any pretrial motions seeking a ruling on that or an assertion of that in any way, you know, to raise it now is absurd.

[Shirley] is here. She will tell you the privilege has been waived. He may be unhappy with it, but it's his own fault. He didn't do anything preemptively to try to get a ruling on that.

*Id.* at 64–65. The court then asked Shirley's counsel his position, and he

stated, "My client is prepared to waive that privilege." *Id.* at 65. The

discussion continued:

[COUNSEL FOR APPELLANTS]: Your Honor, I will note that not only did they not inform me prior to trial that they were going to change their position regarding waiver, but they had previously argued when I had raised the argument that there had been a waiver because she had testified to communications, they argued that she could not waive the privilege of [the Decedent]. That was their argument.

And, Your Honor, I can't be expected to file a motion in limine regarding attorney/client privilege that has been asserted when they don't tell me that they've changed their mind about attorney/client privilege prior to trial, and I would respectfully submit that the very least, at the very least trial should be adjourned and I should be permitted to depose both Defendants now that they want to waive attorney/client privilege because trial is not supposed to be by ambush.

And had they informed me at any time prior to opening argument, I know Your Honor would have no doubt that I would have requested that examination.

[COUNSEL FOR YINGST/GNYH]: Your Honor, the objections were on the record. At no time did [Appellants' counsel] ever file a motion to overrule the objections, which is the typical pretrial practice leading into trial, nor did he file a motion in limine.

You know, he is obviously scrambling for a reason to seek an adjournment here or a discontinuance of today's or this week's proceedings for reasons I don't understand, but there's absolutely no basis for mistrial and no basis for [Appellants' counsel's] objections.

[COUNSEL FOR APPELLANTS]: If I may, I was – I did not file a motion to overrule the assertion of attorney/client privilege for the simple reason that we are perfectly content to bind the parties to the testimony that they gave during the depositions. That was our position.

And because they had no indication and persistently argued that they were asserting the privilege and that the privilege was not being waived, this is an unfair surprise.

*Id.* at 65–66.

Immediately thereafter, the trial court ruled:

All right. Motion for mistrial denied and the Court is satisfied that the previous instructions regarding statements of counsel not being evidence covers the problem. All right .… Thank you.

*Id.* at 66-67.

Here, it is clear that appellants' counsel was aware that there had been assertion, non-assertion, and "irregular" assertion of attorney-client privilege in this case prior to trial. Additionally, appellants' counsel's trial tactic was to "bind the parties to the testimony they gave during the

depositions."[5] Appellants' counsel knew the privilege could be "waived upon trial by the client." 42 Pa.C.S. § 5928.

In light of the pre-trial issues concerning Shirley's attorney-client privilege, counsel had the ability to either contest the assertion of the privilege by Shirley or file a motion *in limine* to preclude introduction of any previously privileged information. He did not do so. This failure negates his claim he was "sandbagg[ed]."[6]

Therefore, I disagree with the Majority that Appellants' counsel was "ambush[ed]"[7] when Shirley waived her attorney-client privilege at trial. In my view, in this case, counsel's failure to obtain a ruling from the trial court prior to trial cannot create "unfair surprise."[8] Accordingly, I would find no abuse of discretion by the trial court's denial of the request for mistrial/curative instruction.

With regard to a motion for nonsuit, our standard of review is well-settled:

> [T]he trial court, on the oral motion of a party, may enter a nonsuit if the plaintiff has failed to establish a right to relief. Pa.R.C.P. 230.1, 42 Pa.C.S.A. In evaluating the trial court's grant of a nonsuit, "we must view the evidence adduced on

---

[5] N.T., 3/16/2015–3/18/2015, at 66.

[6] *Id.* at 64.

[7] Majority Opinion, at 17.

[8] N.T., 3/16/2015–3/18/2015, at 66.

behalf of the [plaintiff] as true, reading it in the light most favorable to [him]; giving [him] the benefit of every reasonable inference that a jury might derive from the evidence and resolving all doubts, if any, in [his] favor." ***Sinclair by Sinclair v. Block***, 534 Pa. 563, 568, 633 A.2d 1137, 1139 (1993). ***Accord Taliferro v. Johns-Manville Corp.***, 421 Pa. Super. 204, 208, 617 A.2d 796, 799 (1992). Additionally, a compulsory nonsuit may be entered only in cases where it is clear that the plaintiff has not established a cause of action.... When so viewed, a nonsuit is properly entered if the plaintiff has not established a cause of action.... ***Taliferro***[], 421 Pa. Super. at 208, 617 A.2d at 799. With respect to the trial court's evidentiary rulings, "[q]uestions concerning the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. The basic requisite for the admissibility of any evidence in a case is that it be competent and relevant." ***Moran v. G. & W.H. Corson, Inc.***, 402 Pa. Super. 101, 125, 586 A.2d 416, 428 (1991), allocatur denied, 529 Pa. 650, 602 A.2d 860 (1992).

***In re Estate of Boardman***, 80 A.3d 820, 822 (Pa. Super. 2013).

The trial court, in its opinion, explained:

Finding that Plaintiffs had not met their burden to establish by any sufficient evidence the elements of the claims alleged in their Complaint, the Court entered non-suit on March 18, 2015.

\*\*\*\*

Plaintiffs believe they are entitled to the money held jointly by Defendant [Shirley] Greguras and/or Attorney Yingst committed some sort of fraud or breach of duty that prevented them from accessing those assets. This belief is strongly, but incorrectly held.

\*\*\*\*

The law is clear. The Pennsylvania Multiple-Party Act (MPAA) provides that "[a]ny sum remaining on deposit at the death of a party to an account belongs to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a intent at the time the account was

- 10 -

created." 20 Pa.C.S.A § 6304. In addition, the MPAA states that "[a] right of survivorship arising from the express terms of an or under this section, or a beneficiary designation in a trust account cannot be changed by will." *Id.* The MPAA is clearly applicable in this case. Only clear and convincing evidence of fraud could overcome the application of the MPAA and, as the record clearly shows, Plaintiffs produced no evidence of fraud at trial. There was a written, unambiguous will. Plaintiffs repeated attempts to introduce evidence of testamentary intent were inappropriate and, further, would not have been sufficient to establish a claim of fraud in any case.

There was also no evidence that could sustain the claim for intentional infliction of emotional distress. The Court informed Plaintiffs' counsel multiple times that expert medical testimony was necessary to maintain such a claim. ***Wecht v. PG Publishing***, 725 A.2d 788 (Pa. 788 (Pa. Super. 1999); ***McCann v. Amy Joy Donut Shops***, [472] A.2d 1149, 1151 (1984); ***Kazatsky v. King David Memorial Park, Inc.***, 527 A.2d 988 (Pa. 1987). It has further been held that medical records are not sufficient for causation and that medical expert reports are necessary. ***Hoffman v. Brandywine Hosp***., 661 A.2d 397 (Pa. Super. 1995).

Finally, the claim that Defendant [Shirley] Greguras failed to properly administer her late husband's estate was without merit as she was under no duty to so administer his estate.[9] Neither Defendant [Shirley] Greguras or Attorney Yingst and his firm acted in any outrageous manner and the punitive damages claim was also properly non-suited.

Trial Court Opinion Denying Plaintiffs' Motions for Post-trial Relief, 8/10/2015, at 1–5 (unnumbered). The record supports the trial court's analysis.

_____

[9] Shirley was the named executrix of the Decedent's will, dated March 2, 2000. However, as the Decedent's assets were jointly held with Shirley and did not pass under the will, Shirley had no obligation to probate the will when he died in 2007.

Here, regardless of whether Yingst advised Shirley and the Decedent or did not advise them in 2000 that placing assets in joint names would defeat the provisions of the Decedent's will, there was no evidence of the Decedent's intent with respect to the disputed assets that were placed in jointly titled accounts in 2004, some four years later. [10] The trial court's analysis of the MPAA is correct; the joint accounts were the property of Shirley upon the Decedent's death, and I agree that there was no evidence of fraud presented at trial. Furthermore, I agree with the trial court and the Majority that the claim of intentional infliction of emotional distress fails for lack of an expert report. Additionally, Appellants' evidence provided no basis for punitive damages.

Accordingly, I would affirm the judgment entered upon the entry of nonsuit in favor of Appellees. Therefore, I dissent.

---

[10] Appellants' evidence showed the Decedent and Shirley had a joint checking account that was opened in 1976, and two joint accounts (certificates of deposit), titled in the names of the Decedent and Shirley, that were opened in 2004. Date of death balances for these accounts were $113,423.26, $111,466.79, and $111,466.79, respectively. **See** N.T., 3/16/2015–3/18/2015, at 78; Plaintiffs' Exhibit 7.