632 A.2d 1333

**Raye SACKS, Individually and as Administratrix of the Estate of Bernard Sacks, Deceased, Appellant,**

v.

**Joseph MAMBU, M.D., Appellee.**

Superior Court of Pennsylvania.

Argued April 29, 1993.

Filed Nov. 5, 1993.

Arnold Levin, Philadelphia, for appellant.

A. Arthur Hanamirian, Philadelphia, for appellee.

Before CAVANAUGH, WIEAND and HOFFMAN, JJ.

WIEAND, Judge:

In this medical malpractice action for an alleged failure to make a prompt diagnosis of colon cancer, the jury returned a verdict in favor of the physician. On appeal, we are asked to review the adequacy of the trial court's jury instructions on causation.

Bernard Sacks was diagnosed with colon cancer in 1984, and surgery was performed the same year. His prognosis was poor because by the time the cancer was discovered it had already invaded the wall of the bowel and had metastasized to the liver. Sacks died within seven months after surgery. His widow, Raye, pursued an action against Dr. Joseph Mambu, who, she alleged, had been negligent for failing to detect her·

husband's colon cancer earlier by using a fecal occult blood test.[1]

Mambu had seen Sacks for the first time in March, 1983, to treat a complaint of abdominal pains.[2] Dr. Mambu concluded that Sacks was suffering from a urinary tract infection and prescribed an antibiotic. The symptoms thereafter disappeared. In August, 1983, Sacks was hospitalized for the removal of his gall bladder, and Mambu saw him to clear him for surgery. Pre-admission tests and both a visual and manual examination of internal organs by the surgeon failed to disclose any indication of cancer. Following this surgery, Dr. Mambu saw Sacks regularly, during which Sacks complained of fatigue. Blood tests revealed normal hemoglobin levels, suggesting that Sacks was not losing blood. At the end of July, 1984, Sacks experienced symptoms associated with jaundice, and a subsequent ultrasound revealed tumors in the liver. He was hospitalized in August, when he was diagnosed with colon cancer. He died in March, 1985.

After trial, a jury returned a verdict for the defendant-physician. The plaintiff then filed a motion for new trial in which she complained of an alleged failure of the trial court to instruct the jury on the "increased risk of harm" doctrine announced by the Supreme Court in *Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280 (1978). Post-trial relief was denied, and a judgment was entered on the verdict. The plaintiff appealed.

■■■ When reviewing an order denying a motion for a new trial, the Superior Court may reverse only in those instances where the trial court clearly and palpably abused its

1. A fecal occult blood test is used to determine whether a patient has blood in his stool. The presence of blood in the stool may be suggestive of colon polyps or cancer. However, not all polyps and cancers bleed, and some bleed only intermittently. Therefore, medical experts were in disagreement as to the efficacy of the test.

2. Sacks had been a patient of Family Medical Associates of Abington since 1979. His primary care physician was Dr. Weiner, whose records showed that a fecal occult blood test had been administered on October 17, 1981. In March, 1983, when Sacks complained of abdominal pains, he was seen by Dr. Mambu.

discretion or committed an error of law which may have controlled the outcome of the case. *Butler v. Kiwi, S.A.,* 412 Pa.Super. 591, 595, 604 A.2d 270, 272, *allocatur denied,* 531 Pa. 650, 613 A.2d 556 (1992); *Lilley v. Johns–Manville Corp.,* 408 Pa.Super. 83, 95, 596 A.2d 203, 209 (1991), *allocatur denied,* 530 Pa. 644, 607 A.2d 254 (1992). A trial court has a duty to clarify the issues so that the jurors may understand the issues which they are to decide. However, as long as the court adequately and clearly covers the subject, the exact language of a requested point need not be used. *Lilley v. Johns–Manville Corp., supra* 408 Pa.Super. at 95, 596 A.2d at 209. Where the motion is based on an allegedly erroneous jury instruction, we consider the alleged error in relation to the entire charge and in light of the evidence presented. *Butler v. Kiwi, S.A., supra* 412 Pa.Super. at 596, 604 A.2d at 272. "If the charge has a tendency to mislead or confuse rather than clarify a material issue, [however,] a new trial is indicated." *Clayton v. Sabeh, M.D.,* 406 Pa.Super. 335, 338, 594 A.2d 365, 366 (1991).

 The relevant issue in *Hamil v. Bashline, supra,* was not the accuracy of the trial court's jury instructions. The issue, rather, was the quality of the evidence necessary to establish a prima facie case of causation in a medical malpractice case where the evidence was that a physician's negligence had increased the risk of harm which would have existed in the absence of negligence. The Court, citing the Restatement (Second) of Torts § 323(a), held as follows:

> Once a plaintiff has introduced evidence that a defendant's negligent act or omission increased the risk of harm to a person in plaintiff's position, and that the harm was in fact sustained, *it becomes a question for the jury as to whether or not that increased risk was a substantial factor in producing the harm.*

*Id.* 481 Pa. at 269, 392 A.2d at 1286 (emphasis added). Because § 323(a) of the Restatement permits the issue of causation to go to the jury upon a less than normal threshold of proof, the Court held, the defendant is not insulated from liability because of "uncertainties as to the consequences of his

negligent conduct." *Id.* at 271, 392 A.2d at 1287–1288 (footnote omitted). Under *Bashline,* a plaintiff does not have to exclude every possible explanation for his harm when establishing a prima facie case; "it is enough that reasonable minds are able to conclude that the preponderance of the evidence shows defendant's conduct to have been a substantial cause of the harm to plaintiff." *Mitzelfelt v. Kamrin, M.D.,* 526 Pa. 54, 64, 584 A.2d 888, 892 (1990), quoting *Hamil v. Bashline, supra* 481 Pa. at 266, 392 A.2d at 1285.

However, in *Jones v. Montefiore Hospital,* 494 Pa. 410, 431 A.2d 920 (1981), the issue was a proper jury instruction where the evidence had shown an increased risk of harm from the medical provider's "failure either to remove the mass in Mrs. Jones' breast or to properly diagnose and treat a later-discovered mass." *Id.* at 417, 431 A.2d at 924. The trial court had instructed the jury to determine whether the provider's failure was a proximate cause in causing the harm. Upon review, the Supreme Court said:

> Thus, the jury was precluded from deciding whether or not appellees' conduct increased the risk of the harm which was in fact sustained, and, if so, whether or not the increased risk was a substantial factor in producing the harm. We conclude that *the jury should have been instructed to impose liability if it decided that appellees' negligent conduct increased the risk of harm and that such increased risk was a substantial factor in bringing about the harm actually inflicted upon Mrs. Jones....* Undoubtedly, an unsuccessful effort to prove that appellees' conduct was the direct and only cause of harm might well have succeeded in persuading the jury that appellees' conduct at least increased the risk of the particular harm inflicted and was a substantial factor in bringing it about. Section 323(a) was designed to relax a plaintiff's burden of proving causation, not to compound it. Because it is clear that sufficient evidence was presented by both parties to raise the issue of increased risk, we conclude that appellants were entitled to a charge based on Section 323(a) [of the Restatement (Second) of Torts].

*Id.* at 417–418, 431 A.2d at 924 (emphasis added). See also: *Mitzelfelt v. Kamrin, M.D., supra; Gradel v. Inouye,* 491 Pa. 534, 421 A.2d 674 (1980).

■ The trial court in the instant case instructed the jury to determine (1) whether it was negligence to fail to administer a fecal occult blood test[3] and (2) if so, whether the failure to administer a fecal occult blood test had been a substantial factor in causing the decedent's death. The trial court also told the jury that if it concluded that the defendant-physician's failure to give the test was a substantial factor in causing the decedent's harm, the defendant could not use the fact that the decedent had died as a defense "because [Dr. Mambu had] effectively cut off any chance that [Sacks] had for survival." The jury was thus told that the possibility that death might have occurred despite defendant's negligence was not a defense if defendant's negligence had been a substantial factor in cutting off the decedent's chance of survival. The charge, therefore, effectively addressed the concern of Section 323(a) of the Restatement (Second) of Torts and the rule of *Hamil v. Bashline, supra.* A defendant is not insulated from liability because there is some speculation or uncertainty as to the consequences of his negligent conduct. *Hamil v. Bashline, supra* 481 Pa. at 271–272, 392 A.2d at 1286–1287.

■ At the conclusion of the trial court's jury instructions, appellant's counsel requested an additional instruction that plaintiff could recover if the failure to administer a fecal occult blood test had increased the risk of harm. In response, the trial court told the jury that appellant could prove causation by showing an increased risk of harm and a substantial factor in causing death. The court repeated that the jury should decide whether the failure to give the test was negligence and a factor in causing the harm and whether the failure to give the test had increased the risk of harm, i.e., death. This was consistent with the instruction required by the Supreme Court in *Jones v. Montefiore Hospital, supra,* and, in view of the facts of the instant case, was appropriate. In the event the

3. On this issue the medical testimony was in sharp conflict.

jury found the defendant-physician negligent in failing to administer a fecal occult blood test, it was then the jury's duty to determine whether the doctor's negligence had been a proximate cause of the decedent's death. This it did by determining whether the failure to administer the test had increased the risk of harm by allowing the cancer to metastasize to the liver before discovery and thereby become a substantial factor in causing death. Appellant received a fair trial, and the judgment entered on the jury's verdict must be affirmed.

Judgment affirmed.