## Connolly v. Brink (No. 2)

C.P. of Monroe County, no. 319 Civil 1993.

*Richard Gorski,* for plaintiff.
*Paul Lees* and *George Vinci,* for defendants.

WALLACH MILLER, *J.,* August 9, 1996—Plaintiff Eileen Connolly filed a complaint on February 3, 1993, for injuries she sustained when she was struck by a pickup truck operated by defendant James Brink. The accident occurred in the late evening hours of November 21, 1991, as Connolly and Sachiko Perry were leaving a fundraising event being held at defendant Mount Airy Lodge. The events surrounding this case are set forth briefly below.

Connolly and Perry were among some 500 individuals to attend a United Way fundraising event. It was the third time Connolly had attended such an event at Mount Airy. They arrived at the function between 7 p.m. and 7:30 p.m., in weather conditions Connolly described as rainy with intermittent patches of fog. Connolly, who was driving, parked her automobile in a Mount Airy parking lot located directly across the street from the lodge. The lodge and the parking lot are separated by Woodland Road, with the lodge located to the east of Woodland Road, and the parking lot located to the west. Upon their arrival at Mount Airy, the two women proceeded safely across Woodland Road and went into the United Way event.

Over the course of the next several hours, the women partook of the festivities, which included dinner, drinks and dancing. In her answers to interrogatories, Connolly conceded that during this time she and Perry both consumed five glasses of wine. A toxicology expert retained by Brink, G. John Gregorio M.D., reported that blood alcohol tests conducted on Connolly 90 minutes after the accident revealed a blood alcohol content of 0.235 percent. Gregorio opined that Connolly's alcohol level was rising at the time of the accident, and may have been as high as 0.250 percent. As a result of a motion in limine ruling made by this court prior to trial, all

evidence of alcohol consumption was excluded. Since this ruling, we have discovered authority to indicate that the evidence of alcohol consumption may be admissible.

The fundraising event ended at 11 p.m. At approximately 11:10 p.m., Connolly and Perry left the ballroom, and began their walk back through the lodge. Upon reaching the front entrance, the women encountered weather Connolly described as a heavy downpour. Although they had no umbrellas or coats, the women began to walk back to Connolly's automobile. When they reached Woodland Road, the women looked in both directions, put their heads down, and began to cross the street. They had crossed the northbound lane, and were in the southbound lane when they were struck by Brink.

Brink, a correctional supervisor, was on his way to work when the accident occurred. Driving in what he described as a heavy rain, Brink was proceeding south on Woodland Road, slowing from a speed of 40 miles per hour as he approached Mount Airy. Brink testified that he first saw the two women when they were 10 feet in front of his truck, and that he struck them a second later. Brink testified that the events happened so quickly that he was only able to apply the brakes, and that he did not have time to swerve or sound his horn. A blood alcohol test taken of Brink two hours after the accident revealed that he had no alcohol in his blood.

Upon being struck, the two women were thrown a distance of approximately 50 feet. As a result of this, Connolly sustained injuries, including multiple fractures to her pelvic area. She was initially hospitalized for seven weeks, and later hospitalized for another week.

After a four-day trial in February of 1996, the jury returned a verdict in favor of Brink and Mount Airy, finding that neither defendant was negligent.[1] The instant motion for post-trial relief followed.

Pursuant to Pa.R.C.P. 227.1, Connolly requests that judgment be entered in her favor, or alternatively, that a new trial be granted. Specifically, Rule 227.1 provides:

"(a) After trial and upon the written motion for post-trial relief filed by any party, the court may

"(1) order a new trial as to all or any of the issues; or

"(2) direct the entry of judgment in favor of any party . . . .

"(b) Post-trial relief may not be granted unless the grounds therefor,

"(1) if then available, were raised in pretrial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial; and

"(2) are specified in the motion. The motion shall state how the grounds were asserted in pretrial proceedings or at trial. Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds." Pa.R.C.P. 227.1(a)(1)-(2), (b)(1)-(2).

It is a long-standing principle that the decision of whether to order a new trial is one that lies within

---

1. Connolly's companion, Sachiko Perry, died as a result of her injuries. Lisa M. Perry and Mary S. Perry, acting as co-administratrices of the estate, brought an action against defendants Brink and Mount Airy Lodge. *Perry v. Brink,* 105 Civil 1993 (C.P. Monroe). *Perry v. Brink* was joined with the instant case for trial. During the second day of trial, the co-administratrices of Perry's estate reached a settlement with defendants, and that action was discontinued.

the discretion of the trial court and will not be overturned on review unless the court committed a clear abuse of discretion or error of law. *Spang & Co. v. U. S. Steel Corp.,* 519 Pa. 14, 24, 545 A.2d 861, 865 (1988); *Chiaverini v. Sewickley Valley Hospital,* 409 Pa. Super. 630, 633, 598 A.2d 1021, 1022 (1991), *alloc. denied,* 530 Pa. 659, 609 A.2d 167 (1992).

In her motion, Connolly seeks relief based on a number of theories. First, Connolly contends that a mistrial should have been granted due to allegedly improper comments made by counsel for Brink during opening statements. Connolly takes issue with the following remarks made by Brink's counsel:

"And how about the investigation? You will hear testimony from the police officer, Investigating Officer Klee, and the other officer who came later on to investigate this accident.

"As you would imagine, two pedestrians being injured on the highway, being taken over to Pocono Hospital, there was quite an investigation. You will hear from that officer. Ask yourselves, was there any citation? When you hear Officer Klee from the witness stand, was there any citation for speeding? Any citation for not keeping a proper lookout? Any reprimands of my client at all?" (N.T. 2/13/96 pp. 11-12.)

As the record reflects, these statements were made on the morning of the first day of trial. Counsel for *Perry* made an objection. Curiously, neither counsel for Perry nor counsel for Connolly elected to place their objections on the record at the conclusion of counsel for Brink's opening statement, at the conclusion of all opening statements, nor at any other point that day.

In fact, the first time counsel for *Connolly* placed an objection on the record was at the conclusion of

Connolly's case two days later, when it was raised contemporaneously with a motion for a new trial. At that time, the court denied Connolly's motion on the grounds that it had not been made in a timely fashion, and was thus deemed waived.

Instantly, we note that Connolly has failed to provide justification to explain the tardiness of her objection. Under the confines of Rule 227.1(b)(1), as well as the rationale set forth by the court at the time of trial, we are compelled to find that Connolly's objection was not timely made. Thus, the objection is deemed waived, and the accompanying motion for a new trial must be denied.

Further, we note that even if Connolly's objection and motion had been raised in a timely manner, we question the soundness of her position. Connolly cites a number of cases as instructive on the instant issue. As Connolly concedes, however, none of the cases squarely address whether remarks made by counsel during opening statements emphasizing that a defendant did not receive a traffic citation is reversible error. Given the heavy penalty that ordering a new trial exacts, we are hesitant to expand this doctrine to statements which do not constitute evidence. Additionally, we note that Connolly's reliance on *Commonwealth v. Metzer,* 430 Pa. Super. 217, 634 A.2d 228 (1993), is misplaced, the facts in *Metzer* are inapposite to the instant scenario, rendering it of little instructive value to the instant dispute. Consequently, we find that Connolly's motion for a new trial based on the propriety of certain opening statements must be denied.

Next, Connolly contends that the court erred in disallowing the testimony of Corporal Jack Dougherty regarding an accident reconstruction which he initially performed in his capacity as a member of the Penn-

sylvania State Police. The heart of Dougherty's testimony would have been his opinion that Brink was traveling between 35 and 48 miles per hour at the time of the accident. In support of her position that this testimony was improperly excluded, Connolly cites *Miller v. Brass Rail Tavern Inc.*, 541 Pa. 474, 664 A.2d 525 (1995), as relevant authority.

We have reviewed *Miller* at length, as well as Connolly's arguments that Dougherty's testimony would not have constituted unfair surprise. Remembering that as a trial court we have broad discretion regarding the admission or exclusion of evidence, we find Connolly's assertions that Dougherty's testimony was improperly excluded to be without merit. See *Micciche v. Eastern Elevator Co.*, 435 Pa. Super. 219, 224, 645 A.2d 278, 280 (1994).

By way of deposition, Dougherty stated that he did not visit the accident scene until a week after the incident had occurred. There was no physical evidence of the accident remaining when Dougherty visited the scene, nor was Dougherty ever able to observe Brink's vehicle. In making his calculations, Dougherty relied upon the measurements taken by the investigating officer of the accident scene, including an opinion as to where impact occurred. Due to the method the investigating officer used to measure the scene, Dougherty was unable to diagram the accident scene or accurately locate certain objects and their relative distances. Dougherty was also unable to ascertain how far the two women were thrown as a result of being struck. Additionally, the supplemental report prepared by Dougherty in 1991 is missing from state police records and presumed lost. The testimony of the investigating officer, Officer Klee, was

not offered at trial, nor was the police accident report containing Klee's measurements offered as an exhibit. Given these factors, it is apparent that Dougherty's testimony was being offered as that of an expert witness, and not as a factual witness.

Since Dougherty was being offered as an expert witness, Connolly had an obligation to identify him as such, so that opposing counsel would have the opportunities to conduct discovery afforded by Pa.R.C.P. 4003.5. Connolly failed to do this. Further, Connolly never offered any report prepared by Dougherty into evidence, nor did she offer the results of any speed calculations prepared by Dougherty into evidence. Finally, Connolly did not reveal her intent to call Dougherty as an expert witness until trial had commenced.

Connolly attempts to argue that despite the above, *Miller* dictates that Dougherty should have been allowed to testify as an expert witness. We disagree. In *Miller,* the defendant objected to a county coroner's opinion testimony, alleging that the testimony would constitute expert opinion, and that the coroner had not been identified as an expert in pretrial interrogatories. On appeal, the Supreme Court agreed that the coroner's opinion testimony would constitute expert opinion, but nonetheless held that the discovery provisions of Rule 4003.5 would not apply. *Miller, supra* at 487, 664 A.2d at 531-32. The court based its ruling on the distinction that the coroner's opinions were not acquired in anticipation of litigation. *Id.*

In the instant case, Dougherty did conduct the initial investigation in his official capacity with the Pennsyl-

vania State Police. That report, however, is missing. The testimony which Connolly wished to present at trial did not stem from Dougherty's initial investigation in his official capacity, but rather was the result of investigations Dougherty completed at Connolly's request. As such, Dougherty's testimony would be expert testimony subject to the mandates of Pa.R.C.P. 4003.5. Since Connolly failed to comply with these requirements, Dougherty was properly excluded as an expert witness at trial.

Connolly next alleges that the court erred in not allowing bystander Kelly Hull to testify to the speed at which she observed Brink traveling. Connolly correctly notes that in Pennsylvania, lay witnesses are competent to express an opinion as to the speed of an automobile. This competency is predicated on two requirements, however: an observation of the vehicular movement in question, and a recognition of impressions of like vehicles at relative speeds. *Radogna v. Hester,* 255 Pa. Super. 517, 520, 388 A.2d 1087, 1088 (1978). As the Superior Court stated in *Radogna:*

"The test for admissibility of lay witness estimations of speed, therefore, is not strictly connected with evidence of the distance traversed by the vehicle in question but, rather, depends upon the existence of an overall opportunity for adequate observation, in addition to the witness's prior experience with moving vehicles. Evidence of the distance over which the observed vehicle moved during the period of observation will go to the weight of the witness's estimation. If the distance is exceedingly small, the court may refuse to allow the witness to offer an estimate of speed because it is apparent that the witness had only a 'fleeting' glimpse

of the moving vehicle." *Id.* at 521-22, 388 A.2d at 1089. (footnote omitted)

In the instant case, Ms. Hull testified to the following about her observations of Brink's vehicle in the moments leading up to the accident:

"Q: Did you watch [Brink's] truck for a period of time as it was coming down the hill?

"A: Just for like a split second.

"Q: Did you see it—did you see it up the hill as it was coming down the hill prior to getting to the driveway?

"A: There's obstacles in the way. In between the obstacles, you can see bits and pieces. It wasn't really that foggy. . . .

"Q: Yes, it was. Did you watch it [Brink's vehicle] as it proceeded all the way across your field of view in front of that circular drive?

"A: I saw the headlights. I turned away. Two of the ladies were discussing something, and then I turned back, right when I saw the front of the truck. . . .

"Q: When you turned back, how much of the truck was in your view?

"A: The full truck.

"Q: And how far did you see it proceed, in terms of truck length? Can you tell us that?

"A: Maybe one or two, it wasn't very far." (N.T. 2/13/96 pp. 22, 38.)

Based on this testimony, we find that Connolly did not lay a proper foundation establishing Ms. Hull's competency to testify as to the speed of Brink's vehicle. This finding is based on the requirements set forth in

*Radogna, supra.* We note that our holding is also consistent with the earlier Superior Court case of *Catina v. Maree,* 272 Pa. Super. 247, 415 A.2d 413 (1979).

Finally, Connolly asserts that the court erred in failing to give a number of Connolly's proposed jury instructions. These proposed jury instructions include plaintiff's suggested points for charge nos. 9, 13, 14, 16 and 17, and cover topics relating to the assured clear distance ahead rule, various duties of a possessor of land, and undertaking the rendering of services.

Generally, in charging the jury, it is the duty of the trial judge to clarify the issues and the application of the law to the facts. *Saylor v. Rose,* 319 Pa. Super. 560, 563, 466 A.2d 686, 687 (1983). An erroneous jury instruction may provide the basis of a new trial if it is demonstrated that the instruction was fundamentally in error and that it may have been responsible for the verdict. *Smith v. Brooks,* 394 Pa. Super. 327, 340, 575 A.2d 926, 932 (1990), *alloc. denied,* 527 Pa. 621, 592 A.2d 42 (1991); *Eck v. Powermatic Houdaille,* 364 Pa. Super. 178, 189, 527 A.2d 1012, 1017 (1987).

Where the accuracy of a jury charge is questioned, the court must not take the challenged words out of context, but look at the charge in its entirety against the background of evidence in a particular case, and determine whether an error was committed as well as whether that error was prejudicial to the complaining party. *Albert v. Alter,* 252 Pa. Super. 203, 381 A.2d 459 (1977). A new trial will not be granted unless the jury instructions as a whole have caused prejudicial error. *PennDOT v. Consolidated Rail Corp.,* 102 Pa. Commw. 611, 617, 519 A.2d 1058, 1061 (1986). See also, *Sacks v. Mambu,* 429 Pa. Super. 498, 502, 632 A.2d 1333, 1334 (1993).

We have reviewed the proposed jury instructions which Connolly has called into question, as well as the jury instructions which were actually given to the jury. Taken as a whole, we fail to find that prejudicial error occurred. As with the other issues raised by Connolly, we have not discovered a substantial reason why a new trial should be granted in this case. Therefore, we enter the following order.

## ORDER

And now, August 9, 1996, plaintiff's motion for post-trial relief is denied.

