656 A.2d 1385

Renee MONTGOMERY, Appellant,

v.

SOUTH PHILADELPHIA MEDICAL GROUP, INC.
and Joseph L. Chapman, M.D., Appellees.

Superior Court of Pennsylvania.

Argued Oct. 27, 1994.

Filed Feb. 21, 1995.

Reargument Denied April 25, 1995.

148

Stewart J. Eisenberg, Philadelphia, for appellant.

Donna L. Goodman, Plymouth Meeting, for appellees.

Before ROWLEY, P.J., and WIEAND and SAYLOR, JJ.

WIEAND, Judge.

In this appeal from an order refusing to remove a compulsory non-suit, we are asked to review rulings by the trial court that (1) plaintiff's expert, a board certified internist and cancer specialist, was unqualified to express an opinion regarding the standard of care expected of a physician's assistant, and (2) plaintiff's evidence was insufficient to submit to a jury the issue of causation.

On August 13, 1985, Renee Montgomery presented herself for an annual physical examination at the South Philadelphia Medical Group.[1] There she was examined by Barbara O'Rourke, a physician's assistant. According to Montgomery's testimony, she informed O'Rourke that she had been experiencing pain in her left breast.[2] At the completion of the examination, O'Rourke noted that Montgomery had fibrocystic breasts and ordered a baseline mammogram. The mammogram was performed at the offices of the medical group on August 20, 1985, and revealed no abnormality. During the succeeding year, Montgomery was treated at various times by the defendant medical group and continued to complain of pain in her left breast.[3] However, she was not referred to a physician or told to seek other medical advice.

On September 8, 1986, after experiencing irregular vaginal bleeding, Montgomery was seen by Dr. Larry Seidman, a gynecologist in the offices of the medical group, and he found a suspicious mass in her left breast. He immediately referred Montgomery to Dr. John Fobia, who confirmed the presence of the mass and performed a biopsy. When the mass was determined to be malignant, Montgomery underwent a modified radical mastectomy of the left breast, followed by chemo-

1. Annual physical examinations were required pursuant to Montgomery's employment by the Albert Einstein Medical Center.

2. This testimony was contradicted by O'Rourke, who was called as of cross-examination by the plaintiff, and by the patient's medical records, which contain no reference to such a complaint.

3. This, too, is contradicted by the patient's medical records, which contain no reference to such complaints.

therapy. The cancer was found to be Stage II and had spread to one lymph node.

Montgomery filed a civil action against the medical group in which she contended that O'Rourke, an employee of the medical group, had been negligent in failing to refer her to a physician after she had complained of pain in her left breast. At the close of her case, the trial court entered a compulsory non-suit, which it subsequently refused to remove.

A motion for a non-suit may be granted only where it is clear that no other conclusion could be reached under the evidence presented. *Bowser v. Lee Hosp.*, 399 Pa.Super. 332, 337, 582 A.2d 369, 371 (1990), *allocatur denied*, 527 Pa. 614, 590 A.2d 755 (1991); *A.J. Aberman, Inc. v. Funk Bldg. Corp.*, 278 Pa.Super. 385, 393, 420 A.2d 594, 598 (1980). When considering such a motion, issues of credibility and the weight to be assigned to the evidence are not to be resolved by the trial judge, but must be left for the finder of fact to resolve at the close of the evidence. *Scott v. Purcell*, 490 Pa. 109, 113, 415 A.2d 56, 58 (1980). Because a jury may not reach its verdict on mere speculation, however, a trial court may enter a non-suit if the plaintiff has failed to produce sufficient evidence to meet his or her burden of proof. *Morena v. South Hills Health Sys.*, 501 Pa. 634, 462 A.2d 680, 683 (1983). On appeal from an order granting a non-suit, a reviewing court must view the evidence, and any reasonable inferences therefrom, in the light most favorable to the plaintiff. *A.J. Aberman, Inc. v. Funk Bldg. Corp.*, *supra.*

At trial, the plaintiff introduced the testimony of Dr. George I. Karp, M.D., a board certified internist, to establish that O'Rourke had breached a duty of care by failing to refer the plaintiff to a qualified physician after the plaintiff had complained of breast pain. Initially, the trial court overruled an objection to the expertise of the witness and permitted his testimony to be heard by the jury.[4] At the close of the

4. Pursuant to agreement of the parties, the testimony of Dr. Karp was presented to the jury through a deposition which had been recorded on video tape.

plaintiff's case, however, the court ruled that the witness was not qualified to testify to the appropriate standard of care for a physician's assistant and entered a compulsory non-suit.

Whether a witness should be permitted to testify as an expert is a question for the discretion of the trial court, whose decision will not be overruled absent an abuse thereof. *Gray v. H.C. Duke & Sons, Inc.,* 387 Pa.Super. 95, 107, 563 A.2d 1201, 1207 (1989), *allocatur denied,* 525 Pa. 583, 575 A.2d 114 (1990); *Mitchell v. Randall,* 368 Pa.Super. 421, 426–427, 534 A.2d 508, 510 (1987). Pennsylvania's standard for qualifying a witness as an expert is liberal. If the witness possesses knowledge outside the ordinary reach and offers testimony which could assist the trier of fact, the witness may testify as an expert. *Ruzzi v. Butler Petroleum Co.,* 527 Pa. 1, 6, 588 A.2d 1, 5 (1991); *Rutter v. Northeastern Beaver County School Dist.,* 496 Pa. 590, 597–598, 437 A.2d 1198, 1201 (1981). To qualify as an expert, a witness need not possess all of the knowledge on a subject; rather, the witness should have a reasonable pretension to specialized knowledge. *Kuisis v. Baldwin–Lima–Hamilton Corp.,* 457 Pa. 321, 338, 319 A.2d 914, 924 (1974); *Lira v. Albert Einstein Med. Center,* 384 Pa.Super. 503, 509, 559 A.2d 550, 553 (1989), *allocatur denied,* 527 Pa. 635, 592 A.2d 1302 (1990); *McDaniel v. Merck, Sharp & Dohme,* 367 Pa.Super. 600, 608, 533 A.2d 436, 442 (1987), *allocatur denied,* 520 Pa. 589, 551 A.2d 215 (1988); *Pratt v. Stein,* 298 Pa.Super. 92, 152–153, 444 A.2d 674, 706 (1982); Packel & Poulin, **Pennsylvania Evidence,** Ch. VII, § 702.3 (1987). The weight to be assigned to the expert's testimony, of course, is for the trier of fact. *Kuisis v. Baldwin–Lima–Hamilton Corp., supra,* 457 Pa. 321, 319 A.2d 914. See also: *Palmer v. Lapp,* 392 Pa.Super. 21, 27, 572 A.2d 12, 15 (1990).

A witness may qualify as an expert if his or her experience or education logically or fundamentally embraces the matter at issue. *Dambacher by Dambacher v. Mallis,* 336 Pa.Super. 22, 42, 485 A.2d 408, 418 (1984) (en banc), *appeal dismissed,* 508 Pa. 643, 500 A.2d 428 (1985). In the area of medicine, specialties sometimes overlap and a practitioner

may be knowledgeable in more than one field. *Estate of Pew,* 409 Pa.Super. 417, 424, 598 A.2d 65, 69 (1991), *allocatur denied,* 530 Pa. 645, 607 A.2d 255 (1992). See also: *Lira v. Albert Einstein Med. Center, supra,* 384 Pa.Super. 503, 559 A.2d 550. " 'Different doctors will have different qualifications, some doctors being more qualified than others to testify about certain medical practices. It is, however, for the jury to determine the weight to be given to expert testimony, in light of the qualifications shown by the expert witness.' " *Pratt v. Stein, supra,* 298 Pa.Super. at 153 n. 52, 444 A.2d at 706 n. 52., quoting *Taylor v. Spencer Hosp.,* 222 Pa.Super. 17, 24 n. 2, 292 A.2d 449, 453 n. 2 (1972).

In *Taylor v. Spencer Hosp., supra,* 222 Pa.Super. 17, 292 A.2d 449, the plaintiff-patient brought suit against the defendant-hospital and alleged that the nurses on its staff had been negligent in providing her with care and treatment. At trial, the plaintiff called a medical doctor to testify to the degree of care owed to her by the hospital and its staff. The Superior Court held that the doctor was a qualified expert. The Court said:

> It is evident that the nurses in the instant case made decisions involving the medical treatment of [the plaintiff], and that these decisions were not uniquely administrative or outside the knowledge of a medical doctor. All areas of medical expertise within the knowledge of nurses are also within the knowledge of medical doctors. This issue has never been considered or decided before in Pennsylvania, but our Supreme Court has, by implication, approved the use of the testimony of a medical doctor to establish acceptable standards of nursing care. *Baur v. Mesta Machine Co.,* 405 Pa. 617, 176 A.2d 684 (1961).

*Id.* 222 Pa.Super. at 24, 292 A.2d at 452–453 (footnote omitted). Accord: *Ragan v. Steen,* 229 Pa.Super. 515, 331 A.2d 724 (1974) (physician who was not a radiologist but who was knowledgeable of the risks of x-ray treatment could testify as an expert in an action against a radiologist). It would seem that knowledge as to the treatment and care of patients which may be possessed by a physician's assistant is also knowledge generally possessed by a medical doctor. Therefore, the Court's reasoning in *Taylor v. Spencer Hosp., supra,* 222 Pa.Super. 17, 292 A.2d 449, applies with equal force when a

qualified physician has been called to testify as an expert regarding the standard of care owed to a patient by a physician's assistant.

The decision in *Dierolf v. Slade,* 399 Pa.Super. 9, 581 A.2d 649 (1990), does not command a contrary result. In that case the plaintiff, who had been injured after undergoing oral surgery to correct a deformity in her jaw and who thereafter suffered a dropped foot due to compression of her peroneal nerve, had sued her oral surgeon for negligence. The medical expert whom she called to testify, however, was not an oral surgeon but an orthodontist who had never performed oral surgery, had never observed a peroneal nerve injury, was not a neurologist, was not board certified, and had rarely ever been present in an operating room. Moreover, the opinion that the expert had been called to offer was not his own but that of a colleague.

Dr. Karp, the expert in the instant case, had been educated in medicine and trained in the care and treatment of cancer patients. He was a board certified internist with a subspecialty in cancer treatment since 1981. He had worked at the National Cancer Institute in Bethesda, Maryland, and the Dana Farber Cancer Center in Boston, Massachusetts, and had held a position as an instructor at Harvard Medical School and the Robert Wood Johnson Medical School. At the time of trial he possessed staff privileges at two hospitals and was a member of the cancer committee of the Robert Wood Johnson University Hospital, where he reviewed administrative aspects of the care of cancer patients. His primary experience had been in the care and treatment of cancer patients, and he had treated between 250 to 400 patients with breast cancer. Given his background and experience, Dr. Karp was qualified to testify to the standard of care owed by medical practitioners to a patient with unidentified pain in her breast and to render an opinion as to the steps which should have been taken by a medical practitioner in caring for such a patient. The trial court erred, therefore, when it excluded Dr. Karp's testimony that the physician assistant employee of the medical center had been negligent in her treatment of the plaintiff.

█ After careful consideration, however, we are compelled to agree with the trial court that the plaintiff's evidence of causation was insufficient to require submission to a jury.

█ A cause of action sounding in medical malpractice requires proof of four elements: (1) that the medical practitioner owed a duty to the patient; (2) that the practitioner breached that duty; (3) that the breach of duty was the proximate cause of, or a substantial factor in, bringing about the harm suffered by the patient; and (4) that the damages suffered by the patient were the direct result of the harm. *Mitzelfelt v. Kamrin*, 526 Pa. 54, 62, 584 A.2d 888, 891 (1990), citing *Morena v. South Hills Health Sys.*, *supra*, 501 Pa. 634, 462 A.2d 680, and Prosser, **Law of Torts**, § 30 at 143 (4th ed.1971). Where the events and circumstances of a malpractice action are beyond the knowledge of the average lay person, the plaintiff must present expert testimony that the acts of the medical practitioner deviated from good and acceptable medical standards, and that such deviation was a substantial factor in causing the harm suffered. *Cohen v. Albert Einstein Med. Center*, 405 Pa.Super. 392, 398, 592 A.2d 720, 723 (1991), *allocatur denied*, 529 Pa. 644, 602 A.2d 855 (1992). See also: *Mitzelfelt v. Kamrin*, *supra*, 526 Pa. at 62, 584 A.2d at 892; *Brannan v. Lankenau Hosp.*, 490 Pa. 588, 595, 417 A.2d 196, 199 (1980). To be admissible, the opinion of an expert witness must be rendered within a reasonable degree of medical certainty. Accord: *Mitzelfelt v. Kamrin*, *supra*, 526 Pa. at 62, 584 A.2d at 892. Whether an expert's opinion is reasonably certain must be decided after considering the expert's testimony in its entirety. *Cohen v. Albert Einstein Med. Center, supra*, 405 Pa.Super. at 400, 592 A.2d at 724. See also: *Williams v. Dulaney*, 331 Pa.Super. 373, 383, 480 A.2d 1080, 1086 (1984). That an expert may have used less definite language does not render his entire opinion speculative if at some time during his testimony he expressed his opinion with reasonable certainty. *Hreha v. Benscoter*, 381 Pa.Super. 556, 562, 554 A.2d 525, 527 (1989), *allocatur denied*, 524 Pa. 608, 569 A.2d 1367 (1989). See also: *Kravinsky v. Glover*, 263 Pa.Super. 8, 21, 396 A.2d 1349, 1356 (1979). But see: *McCann v. Amy Joy Donut Shops*, 325 Pa.Super.

340, 344, 472 A.2d 1149, 1151 (1984) (medical expert's testimony that he could not opine whether plaintiff's ulcer had been caused by ingestion of donut without knowledge of contents of donut was not testimony within reasonable degree of medical certainty). As the Court said in *Kravinsky v. Glover, supra,* 263 Pa.Super. 8, 396 A.2d 1349:

> [An] expert must testify with "reasonable certainty" that "in his 'professional opinion, the result in question did come from the cause alleged.'" *McCrosson v. Philadelphia Rapid Transit Co.,* 283 Pa. 492, 496, 129 A. 568, 569 (1925). See *Hamil v. Bashline, supra,* 481 Pa. 256, 392 A.2d 1280. An expert fails this standard of certainty if he testifies "'that the alleged cause "possibly", or "could have" led to the result, that it "could very properly account" for the result, or even that it was "very highly probable" that it caused the result.' *Niggel v. Sears, Roebuck & Co.,* 219 Pa.Super. 353, 354, 355, 281 A.2d 718, 719 (1971); *Menarde v. Philadelphia Trans. Co.,* 376 Pa. 497, 103 A.2d 681 (1954); *Vorbnoff v. Mesta Machine Co.,* 286 Pa. 199, 133 A. 256 (1926); *Moyer v. Ford Motor Co.,* 205 Pa.Super. 384, 209 A.2d 43 (1965)." *Albert v. Alter,* 252 Pa.Super. 203, 225, 381 A.2d 459, 470 (1977).

*Id.* 263 Pa.Super. at 21, 396 A.2d at 1355–1356.

In *Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280 (1978), the defendants had failed to promptly diagnose and treat a patient's heart attack, and the patient had subsequently died. Whether there was a causal connection between the defendants' negligent delay in diagnosing and treating the patient and his succeeding death was not susceptible of proof to a reasonable degree of medical certainty. It could be shown to a reasonable degree of medical certainty, however, that the defendants' negligence had increased the risk of death. The Supreme Court adopted a reduced standard of certainty in such cases, saying:

> Such cases by their very nature elude the degree of certainty one would prefer and upon which the law normally insists before a person may be held liable. Nevertheless, in order that an actor is not completely insulated because of uncertainties as to the consequences of his negligent con-

duct, Section 323(a) [of the Restatement (Second) of Torts] tacitly acknowledges this difficulty and permits the issue to go the jury upon a less than normal threshold of proof. *Id.* at 271, 392 A.2d at 1287–1288 (footnote omitted).[5] Thus, where the testimony of the plaintiff's expert establishes that the defendant's failure to diagnose and treat an existing condition has increased the risk of harm, the question of whether that conduct caused the plaintiff's ultimate injury requires a jury determination. *Jones v. Montefiore Hosp.*, 494 Pa. 410, 417 n. 8, 431 A.2d 920, 924 n. 8 (1981).

In *Jones v. Montefiore Hosp., supra,* the plaintiff had been referred to the defendant-hospital for treatment of an unidentified mass in her right breast. The plaintiff submitted to surgery in which the hospital's doctors removed two masses; however, they did not entirely remove a part of one of the masses. During the next year the remaining mass continued to grow, but the hospital's doctors, although aware of the problem, did not provide or recommend further treatment. It was later discovered that the mass was cancerous, that the cancer had metastasized to a lymph node, and that treatment with chemotherapy and a modified radical mastectomy would be required. The plaintiff sued the hospital and its doctors, but the jury returned a verdict for the defendants. In reversing, the Supreme Court said:

> In *Hamil v. Bashline, supra,* 481 Pa. 256, 392 A.2d 1280, we noted that Section 323(a) of the Restatement (Second) of Torts (1965) has long been recognized as part of the law of Pennsylvania, and then held that the effect of that section was to relax the degree of certainty ordinarily required of a plaintiff's evidence to provide a basis upon which a jury may find causation:

**5.** Section 323(a) of the Restatement (Second) of Torts provides:

§ 323. Negligent Performance of Undertaking to Render Services
One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
(a) his failure to exercise such care increases the risk of such harm[ ]. . . .

> [O]nce a plaintiff has demonstrated that defendant's acts or omissions, in a situation to which Section 323(a) applies, have increased the risk of harm to another, such evidence furnishes a basis for the fact-finder to **go further** and find that such increased risk was in turn a **substantial factor in bringing about the resultant harm;** the necessary proximate case will have been made out if the jury sees fit to find cause in fact.

> 481 Pa. at 272, 392 A.2d at 1288 (emphasis supplied). Thus, medical opinion need only demonstrate, with a reasonable degree of medical certainty, that a defendant's conduct **increased the risk** of the harm actually sustained, and the jury then must decide whether that conduct was a substantial factor in bringing about the harm.

*Id.*, 494 Pa. at 416–417, 431 A.2d at 923–924 (footnote omitted). Because the medical testimony had shown that the defendants' conduct increased the plaintiff's risk of injury from the mass whose presence was known, the jury should have been instructed, the Court said, that it could impose liability if it decided that the defendants' negligence had been a substantial factor in bringing about the harm. *Id.* at 418, 431 A.2d at 924.

Later, in *Mitzelfelt v. Kamrin, supra,* 526 Pa. 54, 584 A.2d 888, the Court reaffirmed its holdings in *Hamil v. Bashline, supra,* 481 Pa. 256, 392 A.2d 1280, and *Jones v. Montefiore Hosp., supra,* 494 Pa. 410, 431 A.2d 920. In *Mitzelfelt,* a patient at the defendant-hospital had undergone surgery, during which the patient's blood pressure had been permitted to drop dramatically. Afterwards, the patient developed partial paralysis of all four extremities. At trial, the patient's expert could not opine with certainty that the patient's injury had been caused by the negligence of the medical practitioners. Rather, the witness testified as follows:

> Q. Doctor I asked you to advise everybody in this courtroom whether the type of injury that [the plaintiff] suffered after this operation ... is or is not necessarily a result of negligence or malpractice?

A. Not necessarily is the answer. **Nobody can be sure.** Twenty percent of these patients do badly, no matter what you do. (emphasis supplied).

*     *     *     *     *     *

Q. The bottom line is, do you know within a reasonable degree of medical certainty, ... that this drop in that blood pressure, ... caused the problem that [the plaintiff] has?
A. No. It is my opinion that it could have, but I wouldn't put it as a reasonable degree of medical certainty.

*Id.,* 526 Pa. at 58, 584 A.2d at 891. Despite this testimony, at the close of evidence the jury entered a verdict for the plaintiff. The Supreme Court affirmed.

In such a case, where the plaintiff faces a risk of harm regardless of any negligence on the part of the defendant, the Court held, the plaintiff need not eliminate every possible cause of the injury; rather, the plaintiff need only present sufficient evidence so that reasonable minds could conclude that the defendant's conduct had been a substantial cause of the harm. *Id.* at 64, 584 A.2d at 892. Thus, the Court authorized an even more relaxed standard to determine whether the plaintiff had established a causal connection between the acts of the defendant and the injury. The Court said:

> A defendant cannot escape liability because there was a statistical possibility that the harm could have resulted without negligence. "The fact that some other cause concurs with the negligence of the defendant in producing an injury does not relieve the defendant from liability unless he [or she] can show that such other cause would have produced the injury independently of his [or her] negligence." *Majors v. Brodhead Hotel,* 416 Pa. 265, 273, 205 A.2d 873, 878 (1965). Once there is sufficient testimony to establish that (1) the physician failed to exercise reasonable care, that (2) such failure increased the risk of physical harm to the plaintiff, and (3) such harm did in fact occur, then it is a question properly left to the jury to decide whether the acts or omissions were the proximate cause of the injury. *See*

*Bashline, supra,* 481 Pa. at 262, 392 A.2d at 1286; *Gradel v. Inouye,* 491 Pa. [534] at 541, 421 A.2d [674] at 677 [ (1980) ]. "The jury, not the medical expert, then has the duty to balance probabilities and decide whether defendant's negligence was a substantial factor in bringing about the harm." *Bashline, supra,* 481 Pa. at 273, 392 A.2d at 1288–89; *Gradel,* 491 Pa. at 544, 421 A.2d at 679.

*Mitzelfelt v. Kamrin, supra,* 526 Pa. at 68, 584 A.2d at 894–895. Therefore, where the plaintiff has alleged that the defendant's conduct increased the risk of injury, the defendant will not be relieved from liability merely because the plaintiff's medical expert was unable to say with certainty that the defendant's act caused the harm. So long as reasonable minds can conclude that the defendant's conduct was a substantial factor in causing the harm, the issue of causation may go to the jury upon a less than normal threshold of proof. *Id.* See also: *Sacks v. Mambu,* 429 Pa.Super. 498, 502, 632 A.2d 1333, 1335 (1993); *O'Rourke by O'Rourke v. Rao,* 411 Pa.Super. 609, 617, 602 A.2d 362, 365 (1992).

In the instant case, there was evidence that the plaintiff had been examined by employees of the defendant and that the plaintiff had complained of pain in her left breast. There also was evidence that, despite this complaint, the plaintiff had not been referred to a physician. There was no evidence, however, of the presence of any lump or mass; and a mammogram showed no abnormality. Thus, there was no evidence that an examination by a physician would have disclosed anything more than was discovered by the physician's assistant. The time when the tumor could first have been detected does not appear. Was it detectable a year earlier or only a short time before it was discovered by Dr. Seidman? Although Dr. Karp testified that the failure to refer plaintiff to a physician fell below the standard of care required of a physician's assistant, he was either unable or unwilling to say that the risk of harm had been increased thereby. He said only that it was *"very possible"* that the failure to refer her to a physician *"may have increased* her chance of having a positive lymph node" when the cancer was eventually diagnosed and that it "may have

increased her risk for requiring a mastectomy with chemotherapy." On cross-examination he said, "[H]ad the tumor been diagnosed one year earlier, it is indeed possible that if it were small enough, the breast could have been conserved and treated by lumpectomy/radiation therapy alone." All of this was speculative, he conceded, saying "one can only speculate as to had it been diagnosed earlier what its size may have been, since we don't know, nor will we ever know."

After careful consideration, we hold that this testimony was insufficient even under the relaxed standards of *Hamil v. Bashline, supra,* 481 Pa. 256, 392 A.2d 1280, *Jones v. Montefiore Hosp., supra,* 494 Pa. 410, 431 A.2d 920; and *Mitzelfelt v. Kamrin, supra,* 526 Pa. 54, 584 A.2d 888. The plaintiff-appellant's tumor was removed by mastectomy and subsequent chemotherapy. Insofar as the record discloses, it has not recurred. Her evidence showed only that if the tumor could have been diagnosed earlier—there is no evidence it could have been—then it is possible that it may have been treatable by lumpectomy or radiation instead of by mastectomy and chemotherapy. Under these circumstances, the trial court did not err by entering a compulsory non-suit.

Affirmed.