**RAVIN, INC., Appellant,**

v.

**FIRST CITY COMPANY, a Corporation and First City South Associates, a Delaware Limited Partnership, Appellees.**

Superior Court of Pennsylvania.

Argued Dec. 18, 1996.

Filed April 9, 1997.

Anthony W. Hinkle, Pittsburgh, for appellant.

Thomas M. Hardiman, Pittsburgh, for appellees.

Before POPOVICH, JOHNSON and HESTER, JJ.

POPOVICH, Judge:

This is an appeal from the order of the Court of Common Pleas of Allegheny County which granted appellee's motion for compulsory non-suit and a motion for directed verdict. Herein, appellant states that he is entitled to a new trial because (1) the lower court erred in granting a compulsory non-suit as to certain claims; (2) the lower court erred in striking appellant's expert testimony; and (3) the lower court erred in granting a directed verdict in favor of appellees. We affirm.

This action arises out of a series of agreements related to the construction of a Pizzeria Uno. Appellee First City South Associates (hereinafter "FCSA") was founded to develop the Galleria Mall in Mount Lebanon, Pennsylvania. FCSA purchased a building and hired a general contractor to renovate the facility and hired appellee First City Company (hereinafter "FCC") to oversee the construction of the mall and to negotiate leases between FCSA and prospective tenants. N.T., 9/5/95, pp. 47–48. Although FCSA's contractor completed part of the construction of the "tenant spaces", the initial tenants were required to complete the construction of the individual retail spaces.

FCSA entered into a lease agreement with Ultimate Restaurant Group (hereinafter "URG") for a tenant space in the Galleria Mall. The lease stated that URG would construct a Pizzeria Uno restaurant which

would be open for business in March, 1989. The lease also provided for a "tenant improvement allowance" of $150,000.00 to help minimize the tenant's initial costs. In order to be eligible for the tenant allowance, URG had to submit a written request which stated that all the contractors and suppliers had been paid. The request had to be accompanied by lien waivers from each contractor and supplier. N.T., 9/5/95, p. 50.[1]

URG entered into an agreement with appellant Ravin, Inc. for the construction of the Pizzeria Uno. N.T., 9/6/95, p. 196. The initial contract price was $550,000.00. But extra costs accumulated, and the contract price increased to approximately $612,000.00. N.T., 9/6/95, pp. 210, 236. Construction of the Pizzeria Uno began in April, 1989. In accordance with its contract, appellant submitted monthly progress bills to URG. As a result of URG's failure to pay a large percentage of the bills, appellant contemplated "pulling off" the job. After meeting with URG, appellant's owner decided to complete the project. N.T., 9/6/95, p. 218.

URG opened the Pizzeria Uno in August, 1989. URG never applied for the tenant allowance because URG did not pay all of the contractors and suppliers, and they did not obtain lien waivers. 9/5/95, p. 58. Appellant's unpaid bill totalled $278,166.72. N.T., 9/6/95, p. 213. At some point during the fall of 1989, URG stopped paying rent to FCSA. Subsequently, URG filed for bankruptcy. After the restaurant space remained vacant for two years, FCSA entered a lease agreement with Armstrong's Restaurant. N.T., 9/7/95, p. 327. Before Armstrong's Restaurant opened, it renovated the kitchen. Appellant's owner, Mr. Ralph P. Murovich, stated that Armstrong's kitchen was much different than the kitchen which appellant constructed for URG. N.T., 9/6/95, p. 264.

Appellant filed a complaint against FCSA and FCC in which it asserted the following claims against both parties: (1) breach of contract; (2) promissory estoppel; (3) breach of implied contract; (4) unjust enrichment; and (5) quantum meruit. The crux of appellant's complaint was that FCSA and FCC misled appellant into believing that they would be paid the $150,000.00 tenant allowance and that FCSA and FCC had been "unjustly enriched" by the improvements which appellant made to the retail space. Prior to the start of the jury trial, the lower court dismissed all of appellant's claims except the promissory estoppel and breach of implied contract claims against FCSA and FCC and the unjust enrichment claim against FCSA.

During the trial, appellant attempted to elicit evidence relating to the $150,000.00 tenant allowance in the lease between FCSA and URG. Mr. Murovich testified that he considered stopping work on the project because URG had failed to pay for a large portion of the submitted bills. Mr. Murovich contacted the president of URG, Thomas Herward, and asked to meet with him at the construction site. N.T., 9/6/95, p. 218. During the meeting, Mr. Herward told Mr. Murovich that there was a $150,000 tenant allowance. An employee of FCC, Robert Jagger, was also present at the meeting. Mr. Murovich asked Mr. Jagger about the tenant allowance, and Mr. Jagger confirmed that the allowance existed. N.T., 9/6/95, p. 255. Mr. Murovich stated that the project was completed based on the understanding that FCSA would pay the tenant allowance.[2]

Several people testified that FCSA and FCC had no obligation to pay appellant the tenant allowance. The chairman of FCSA, Richard Zappalla, testified that in his twenty-five years of experience in commercial real estate, he had never known of a landlord who paid a tenant allowance to a tenant's contractor. The allowance was always paid to the tenant. N.T., 9/5/95, p. 57. The owner of URG, Mr. Herward, stated that he never heard Mr. Jagger promise to pay appellant

---

1. FCSA required the lien waivers so that the contractors and suppliers could not claim a lien on FCSA's property in the event that URG did not pay them in full. N.T., 9/7/95, p. 326.

2. Mr. Murovich stated that appellant resumed work on the project for two reasons. First, appellant's financial exposure was already great and he believed URG was more likely to pay them if Pizzeria Uno opened for business. Second, Mr. Murovich believed that URG would give them the tenant allowance after they received it from FCSA. N.T., 9/6/95, pp. 219, 255.

the tenant allowance. N.T., 9/5/95, p. 138. In addition, Mr. Jagger stated that he did confirm the existence of the tenant allowance to Mr. Murovich, but he did not provide any further information. N.T., 9/6/95, pp. 302–03.

Appellant offered the testimony of Paul Cohen as an expert in commercial real estate. Mr. Cohen stated that he was a self-employed real estate manager and developer, but that he was not a real estate appraiser. N.T., 9/6/95, pp. 144, 160. Mr. Cohen testified that he believed appellant had a valid claim against FCSA because FCSA derived a benefit from the work which appellant did to improve the tenant space. N.T., 9/6/95, p. 150. Mr. Cohen never visited the Galleria Mall. When asked to quantify the benefit which appellees received from appellant's work, Mr. Cohen stated that the value was $347,707.50. In arriving at this figure, Mr. Cohen stated that FCSA received the full benefit of the work which appellant performed. He stated that the value of the work was $612,000 because that was the total price of appellant's contract with URG. Mr. Cohen subtracted the payments which appellant received from URG, and he arrived at a sum of $278,166.00. N.T., 9/6/95, p. 155. Mr. Cohen stated that FCSA gained the benefit of the work for which appellant was not paid. N.T., 9/6/95, p. 177. Mr. Cohen multiplied this amount by a "multiplier" of 1.25% which he considered to be interest. Mr. Cohen stated that he calculated the multiplier by analyzing FCSA's subsequent leases with Armstrong's Restaurant. At the conclusion of appellant's evidence, FCSA and FCC moved for a compulsory non-suit. The court granted the motion as to all of the remaining claims except for the unjust enrichment claim against FCSA.

At the close of all the evidence, FCSA moved to strike the testimony of appellant's expert, Paul Cohen. N.T., 9/8/95, p. 343.

The lower court granted the motion. The lower court stated that the expert used a faulty basis for quantifying the benefit which appellant conferred upon FCSA. N.T., 9/8/95, p. 348. The lower court said the expert was erroneously relying on the balance of URG's unpaid bill. N.T., 9/8/95, p. 348. At that point, FCSA moved for a direct verdict as to the remaining claim of unjust enrichment. N.T., 9/8/95, p. 351. The court granted the motion for a directed verdict. N.T., 9/8/95, p. 357. The lower court stated that appellant failed to prove that FCSA misled appellant. After the lower court granted FCSA's motion for a directed verdict, appellant made a motion for withdrawal of juror based on the lower court's exclusion of the expert testimony at the conclusion of the trial.

The lower court entered a written order which granted FCSA's motion for a directed verdict and granted appellant's motion for withdrawal of juror. The lower court amended this verdict on September 13, 1995, but the verdict was again contradictory and granted the directed verdict and the motion for withdrawal of juror. On September 18, 1995, appellant filed post-trial motions in which it sought removal of the non-suit and it requested a new trial. After FCSA and FCC filed a motion to confirm the verdict, the lower court filed a final verdict which granted FCSA's motion for a directed verdict and amended and superseded the prior verdicts. Subsequently, the lower court denied appellant's post-trial motion for a new trial.[3] Appellant filed a timely appeal with this court.

∎ Appellant's first contention is that the lower court erred in granting a non-suit as to the claims of promissory estoppel and breach of implied contract.[4] A trial court may grant a motion for a non-suit only if it is clear that no other conclusion could be

**3.** This Court's review of the denial of a motion for a new trial is whether the lower court committed an abuse of discretion or an error of law which controlled the outcome of the case. *Randt v. Abex Corp.*, 448 Pa.Super. 224, 671 A.2d 228 (1996).

**4.** In its "Statement of Issues Involved", appellant claims that the lower court erred in granting a non-suit as to both claims. Nonetheless, in the

argument section of its brief, appellant only discusses promissory estoppel. Claims which are not supported and developed in the brief are not reviewable. *Commonwealth v. Long*, 367 Pa.Super. 190, 532 A.2d 853 (1987); Pa.R.A.P., Rule 2119(a). Thus, we will limit our analysis of this issue to the propriety of the lower court's grant of non-suit of the promissory estoppel claim.

reached based on the evidence. *Montgomery v. South Philadelphia Medical Group,* 441 Pa.Super. 146, 656 A.2d 1385 (1995). A non-suit is proper if the plaintiff has failed to offer sufficient evidence to establish the necessary elements of the cause of action. The trial court must not consider issues of credibility and weight of the evidence. *Taliferro v. Johns–Manville Corp.,* 421 Pa.Super. 204, 617 A.2d 796 (1992). In reviewing the grant of a non-suit, this Court must review the evidence and any reasonable inferences in the light most favorable to the plaintiff. *Montgomery, supra.*

■ The doctrine of promissory estoppel applies if a party presents sufficient evidence to show that (1) one party induced the other party to act; and (2) the other party justifiably relied on the inducement. *First Home Savings Bank, FSB v. Nernberg,* 436 Pa.Super. 377, 648 A.2d 9 (1994). Promissory estoppel does not apply if the complaining party acted on his own will and not as a result of the defendant's representations. *Cerami v. Dignazio,* 283 Pa.Super. 424, 424 A.2d 881 (1981).

■ In the present case, appellant claims that it was induced to complete the construction of Pizzeria Uno. Appellant argues that Mr. Jagger's confirmation of the existence of the tenant allowance amounted to an indication that appellant would receive the funds. The lower court found that appellant failed to offer any evidence that FCSA or FCC induced appellant to complete construction of Pizzeria Uno. N.T., 9/6/95, p. 289. In its opinion, the lower court stated

the evidence establishes no more than that Mr. Jagger, when asked by Mr. Murovich, confirmed the existence of a tenant construction allowance. He did not delve into the specifics of how and when the allowance would be awarded to Ravin in this case, let alone that it would be paid directly to Ravin by First City.

Trial Court Opinion at 4. We agree with the lower court that the evidence did not demonstrate anything except that Mr. Jagger confirmed that there was a tenant allowance in the lease. Appellant's owner, Mr. Murovich, confirmed that he did not request information about the requirements for obtaining the tenant allowance. Accordingly, we find that appellant failed to present evidence that FCSA induced it to complete construction of the Pizzeria Uno.

■ Appellant's second contention is that the court improperly excluded the testimony of Paul Cohen. The decision of whether a witness may testify as an expert is within the discretion of the trial court and the decision will not be overruled absent an abuse of discretion. *Montgomery v. South Philadelphia Medical Group, Inc.,* 441 Pa.Super. 146, 656 A.2d 1385 (1995).

In the present case, the lower court denied FCSA's first two motions to exclude the expert testimony of Mr. Cohen. At the conclusion of all the testimony, FCSA renewed its motion to exclude the testimony of Mr. Cohen. At this point, the only remaining claim was the unjust enrichment claim against FCSA. The lower court granted the motion. N.T., 9/8/95, p. 343. In explanation for its decision, the lower court stated that appellant did not offer any evidence of unjust enrichment. The lower court emphasized the fact that Mr. Cohen never visited the premises and that Mr. Cohen improperly equated FCSA's benefit with the amount of appellant's unpaid bill.

In *D.A. Hill Co. v. Clevetrust Realty,* 524 Pa. 425, 573 A.2d 1005 (1990), the Supreme Court reviewed the propriety of a subcontractor's unjust enrichment claim against a property owner. In *D.A. Hill,* the subcontractor claimed that even though it had no contractual relationship with the property owner, the owner benefitted from the work it had performed on the property. *Id.* The Court clarified that the value of the benefit conferred to the property owner is *not* measured by the value of the invoice submitted by the subcontractor to the contractor. Furthermore, "the owner's retention of the benefit without paying any compensation to the subcontractor would not be unjust if the owner did not contract directly with or mislead the subcontractor." 573 A.2d at 1009.

In the present case, Mr. Cohen stated that the amount of FCSA's benefit was exactly equal to the unpaid portion of the bill which appellant submitted to URG. Mr. Cohen did

not offer any evidence to substantiate the amount of the benefit to FCSA. Also, Mr. Cohen did not offer any evidence that FCSA misled appellant. Thus, the lower court did not abuse its discretion in excluding the testimony.

■ Appellant's final claim is that the lower court erred in entering a directed verdict. In its brief, appellant does not provide us with any new arguments to support this claim. Appellant simply argues that it was improper to strike the testimony of Paul Cohen. When this Court reviews a trial court's decision to direct a verdict in favor of a defendant, "we must view the evidence presented in the light most favorable to plaintiff and determine whether plaintiff failed to prove his case as a matter of law." *Edwards v. Brandywine Hospital*, 438 Pa.Super. 673, 652 A.2d 1382 (1995).

■ As stated previously, we agree with the lower court's decision to grant a non-suit as to the claims of promissory estoppel and breach of implied contract. The only claim which remained was the unjust enrichment claim against FCSA. Appellant alleges that its work increased the value of the property and that FCSA was "unjustly enriched." The doctrine of unjust enrichment does not apply simply because the defendant has benefitted as a result of the plaintiff's work. The enrichment is not "unjust" unless the defendant misled the plaintiff. *Styer v. Hugo*, 422 Pa.Super. 262, 619 A.2d 347 (1993). In the present case, there is no evidence that FCSA misled appellant into continuing the work on the construction site. Accordingly, it was proper for the lower court to deny appellant's motion for a new trial.[5]

Order affirmed.

---

[5]. Appellant also raises the fact that the lower court's first written verdict was inconsistent because it granted FCSA's motion for a directed verdict and it granted appellant's motion for withdrawal of juror. As noted properly in the lower court's opinion and appellees' brief, the lower court amended its verdict to conform to its rulings at trial. The final, amended version stated that it granted FCSA's motion for a directed verdict.