## Mann v. Schultz

*Steven Cotlar* and *Robert McDaid,* for plaintiff.
*Charles A. Harad,* for defendants.

SCOTT, *J.,* December 29, 1997—Defendants, Ivan Schultz and Michael Schultz, t/a 1000 Washington Associates and Have-A-Vend Inc., have filed a motion for post-trial relief. For the following reasons, the motion is denied.

The factual history in this matter is as follows. Plaintiff, Raymond Mann, was employed by Have-A-Cup as a truck driver and delivery person. Ivan and Michael Schultz, as individuals, own a warehouse facility which houses two companies, Cup and Have-A-Vend. Both Cup and Vend are owned by Ivan and Michael Schultz, t/a 1000 Washington Associates.

On the morning of February 14, 1994, Mann arrived at the aforementioned warehouse facility, his place of employment. While attempting to enter the building, Mann slipped and fell on ice in an area not controlled by his employer. As a result of the fall, Mann suffered personal injuries. Mann claims that the source of the ice was water from a drainpipe which was connected to a sink on the interior of the warehouse. This sink was used for washing equipment by the employees of Vend. The resulting effluent would flow through the pipe and eventually onto the ground outside the facility.

Mann filed suit against Ivan and Michael Schultz, t/a 1000 Washington Associates and Have-A-Vend. Plaintiff did not file suit against his employer, Cup. The named defendants later joined Cup as an additional defendant.

A jury trial was conducted on August 19 and 20, 1997. At trial, plaintiff testified, as did an expert on his behalf, Charles J. Goedken P.E., a civil engineer. Goedken testified regarding the flow of water from the building, and plumbing and building industry standards. Plaintiff's other witness was Dr. Christopher Aland M.D., who testified via videotape deposition regarding Mann's injuries. Defendants presented the testimony of defendant, Michael Schultz, a videotape of the site of the slip and fall, and brief segments of the deposition of Ivan Schultz. Defendants did not present any medical

testimony. The jury returned a verdict for plaintiff in the amount of $260,000.

Defendants raise the following issues in their motion for post-trial relief:

(1) plaintiff's expert, Goedken, should not have been allowed to present expert testimony;

(2) plaintiff's expert, Goedken, should not have been allowed to testify regarding the BOCA Code;

(3) one of the plaintiff's hypothetical questions to Goedken was based on facts not in evidence;

(4) the court erred in its handling of Cup in regards to its role at trial;

(5) a judgment n.o.v. is proper since there was insufficient evidence to support the verdict; and

(6) a remittitur should be granted since the jury's award was excessive and failed to take into account plaintiff's duty to mitigate his damages.

We will discuss each of these issues below.

Defendants initially argue that plaintiff's expert, Goedken, should not have been allowed to present expert testimony. The basis of their argument is that the content of Goedken's testimony did not meet the criteria for admission as expert testimony. It is a well-established principle in Pennsylvania that the admissibility and scope of an expert's testimony is within the discretion of the trial court. The trial court must decide whether the proposed testimony will assist the trier of fact. *Colston v. SEPTA*, 679 A.2d 299 (Pa. Commw. 1996). This determination will not be disturbed by the appellate court absent abuse of discretion by the lower court. *Montgomery v. South Philadelphia Medical Group Inc.*, 441 Pa. Super. 146, 152, 656 A.2d 1385, 1388 (1995); see also, *Bolus v. United Penn Bank,* 363 Pa. Super. 247, 525 A.2d 1215 (1987). Defendants assert that Goed-

ken's testimony was not beyond the ordinary reach of the trier of fact. However, contrary to defendants' assertion, Goedken testified regarding industry standards. (N.T., vol. I, p. 146.) Testimony as to industry standards would clearly aid the trier of fact who is not involved or trained in that industry.

Defendants next argue that Goedken should not have been allowed to testify regarding the Building Officials and Code Administrators (BOCA) Code. They assert that the probative value of this testimony was outweighed by the danger of unfair prejudice or confusion. Federal Rules of Evidence Rule 403 proscribes that relevant evidence is admissible so long as "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." This rule has been applied by the Pennsylvania courts. See *Whistler Sportswear Inc. v. Rullo,* 289 Pa. Super. 230, 433 A.2d 40 (1981); *Burrell Construction & Supply Co. v. Straub*, 440 Pa. Super. 596, 656 A.2d 529 (1995). Defendants therefore assert that the testimony should be excluded. We disagree.

Although plaintiff did not plead any violation of the Code, the testimony was relevant. The BOCA Code sets standards for the building and plumbing industry. Goedken testified at trial that the setup and use of the drainpipe was in violation of the Code. (N.T., vol. I, pp. 145-48.) In response, the defendants presented testimony that they have never received any violation notices from any inspectors. This line of testimony allowed the jury to consider whether the defendants had breached an industry standard of care leading to a dangerous condition. We find this testimony to have probative value. In addition, since the jury was never charged on a violation of the BOCA Code, nor did any party

claim at trial that a violation of BOCA was negligence per se, any potential prejudice was minimal.

Defendants' third assertion is that the following hypothetical question, posed to Goedken, was based on facts not in evidence:

"And I'm going to ask you to assume that water and effluent would come out of that sink and down through the drain, would then emerge through the drain to the left of the Cup door, come down on to the ground and go downhill. . . .

"[A]nd I'm going to ask you to assume that that state of affairs with that drain as it was continued from at least May of 1993 when the Schultzes purchased the property down through February 14, 1994. And I'm going to ask you to assume that the state of affairs was in existence as of the morning of February 14, 1994." (N.T., Vol. I, pp. 137-38.)

The "state of affairs" referred to was that the drainage system emptied a sink into a pipe which passed through a wall and emptied onto the ground on the exterior of the building. All of the facts contained in the hypothetical were of record. The Schultzes purchased the property in early May 1993. (N.T., vol. I, p. 63.) At the time of the purchase, the drainpipe was connected to a sink located on the interior of the building. (N.T., vol. I, p. 65.) This sink was used to wash parts which were used to conduct Vend's business. (N.T., vol. I, p. 65.) When the sink was used, effluent would come down the pipe and out of the drain. (N.T., vol. I, p. 65.) After the effluent came out of the drain, the liquid would run down onto the pavement into a creek. (N.T., vol. I, pp. 65-66.) Ivan Schultz, via deposition, verified the above information. (N.T., vol. II, pp. 13-14.) Therefore, it is evident that all of the components of the hypothetical were matters of record.

In addition, defendants assert that the court made an error of law dismissing additional defendant, Have-A-Cup Inc., on a sua sponte theory of indemnification, when the additional defendant never pled indemnification but did admit responsibility. Defendants' claim that the court dismissed the claim against the additional defendant is incorrect. The court did not dismiss the action against Cup. The court merely ruled that there was not question for the jury regarding Cup's negligence or any apportionment thereof. Any issues regarding Cup are between Cup and the named defendants to be handled in a separate non-jury setting.

The court's action in not allowing the jury to decide Cup's negligence is supported by *Fulmer v. Duquesne Light Company*, 374 Pa. Super. 537, 543 A.2d 1100 (1988).

"It is beyond cavil that in this Commonwealth that an employer may not be joined as an additional defendant in an action by an injured employee against a third party tort-feasor on grounds that he is liable to his employee on the cause of action alleged or on grounds that he is jointly or severally liable with the defendant thereon. The rule bars the joinder of an employer for the purpose of apportioning negligence." *Id.* at 540, 543 A.2d at 1101. The court reasoned that this conclusion was "mandated by section 303 of the Pennsylvania Workmen's Compensation Act which provides:

"(a) The liability of an employer under this Act shall be exclusive and in place of any and all other liability to such employees, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death . . . ." *Id.* at 540-41, 543 A.2d at 1101-1102.

Further, at no point were defendants precluded from arguing that Cup was the negligent party, which, if believed, would result in no assessment of negligence falling on either the Schultzes or Vend. (N.T., vol. I, p. 38.)

Next, defendants assert that they are entitled to a judgment n.o.v. because there was insufficient evidence that the drainpipe was a causal factor in the formation of the ice. Defendants state that plaintiff was required to produce expert testimony on the issue of causation in order to prevail at trial. Plaintiff did not produce such expert. However, Mann testified that the ice on which he fell was coming from the drain. (N.T., vol. II, p. 35.) In a matter such as this, in which there is an eyewitness who testifies, their testimony is sufficient.

Defendants' final assertion is that a remittitur be granted because the jury's award failed to take into account plaintiff's duty to mitigate his damages and was excessive. Michael Schultz testified that he offered employment to Mann, which Mann declined. (N.T., vol. I, p. 106.) However, Mann testified that no such offer ever occurred. (N.T., vol. II, p. 45.) It is a well-established principle that issues of witness credibility are for the jury to decide. See *Weidemoyer v. Swartz*, 407 Pa. 282, 180 A.2d 19 (1962). Evidently, the jury believed Mann and therefore did not provide for any mitigation.

Further, the jury's decision to apparently believe plaintiff is of no surprise. At the end of this case, defendants' attorney presented a videotape of the slip and fall scene. (Exhibit D-4.) The tape showed water running from the drainpipe, onto the ground, down the side of the building, and away from the site of the fall. After playing the tape for several minutes, defense counsel stopped the tape. However, plaintiff's counsel stated that he would like to "cross-examine the tape," as there was more on the tape. The court directed that the tape-

playing resume. There was approximately 30 seconds of "snow." The jury then saw the defendant, Michael Schultz, standing far from the side of the building, but near where the fall occurred. He was watching the water flow past his feet. In this portion of the tape, which the defense did not want to show the jury, the path of the water contradicted the defense assertion that the water only ran alongside the building. It is reasonable to conclude that this tape was taken into account by the jury assessing the credibility of the plaintiff and the lack of credibility of the defendant.

Second, defendants argue that the amount of the verdict was excessive.

"Normally, . . . the amount of damages that a person is to be awarded for pain and suffering, both past and future, is primarily a jury question. . . . Judicial reduction of a jury award for compensatory damages is appropriate only when the record is plainly excessive and exorbitant . . . . The trial court may grant a request for remittitur only when a verdict supported by the evidence suggests that the jury was guided by partiality, prejudice, mistake or corruption." *Doe v. Raezer,* 444 Pa. Super. 334, 340, 664 A.2d 102, 105 (1995). (citations omitted)

None of theses factors are present in the instant case. Additionally, we do not find the verdict or monetary award to "shock [the court's] sense of justice . . ." so as to warrant a new trial. *Id.* at 348, 664 A.2d at 109. At the time of the slip and fall, Mann was two months away from his 61st birthday. His income for the year prior to the slip and fall was approximately $23,829 per year. (N.T., vol. II, p. 23.) There was evidence of lost income of at least $47,000 for the two years between the slip and fall and trial. Mann testified that he planned to work beyond the age of 65, and as long as he could. (N.T., vol. II, p. 25.) Therefore,

there was a significant claim for a lost income component of the unallocated award. Subsequent to the accident, Mann testified that he suffered a weight gain of approximately 65 pounds due to his inactivity. There was also a claim for pain and suffering. He further testified that he broke his leg, which was treated by a cast extending from his hip down to his ankle for a few months. (N.T., vol. II, p. 40.) His treatment was then changed to the use of an ankle boot, a boot which goes on like a shoe and extends to the knee with steel straps, for six or seven months. (N.T., vol. II, p. 41.) He testified that he treated with Dr. Aland for approximately one and one-half years. (N.T., vol. II, p. 42.) In light of Mann's expected continuation in the work force had this incident not occurred, his lost wages, the extent of his injury and the length of his treatment, we do not find the jury's award to be excessive.

In conclusion, for the reasons stated above, we find defendants' motion to be without merit and enter the attached order.

## ORDER

And now, December 29, 1997, upon consideration of defendants, Have-A-Vend Inc. and Ivan and Michael Schultz, t/a 1000 Washington Associates' motion for post-trial relief, plaintiff's response and parties' memoranda thereto, it is hereby ordered and decreed that the motion is denied and dismissed.

## ORDER

And now, January 2, 1998, delayed damages in the amount of $12,808.08 are awarded to Raymond Mann in the above captioned matter.